JAMES A. ROBINSON *vs.* DANIEL B. McKENNA.

PROVIDENCE—DECEMBER 28, 1898.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

[1] *Fraud in Fact and in Law.*

A fraudulent intent in the making of a conveyance is ordinarily, but not always, a question of fact.

If an intent to defraud appear, whether from the deed itself or from extrinsic evidence, it will render the transaction void.

In this regard fraud in law has the same effect as fraud in fact, and the result is that to which the law looks.

(2) *Assignment of Wages. Secret Agreement. Garnishee Proceedings.*

A debtor cannot place his earnings beyond the reach of attachment and at the same time receive a portion thereof to his own use.

An assignment of wages to secure a present indebtedness, and also to secure the assignee for future advances of goods and merchandise, is valid and binding up to the amount of the debt secured and of the goods actually furnished at the time of attachment by trustee process.

But, as against creditors, an assignment is not good if it go beyond this and include money to be paid over to the assignor out of his own earnings.

ASSUMPSIT on book account. Defendant's wages were attached on the original writ and an assignee thereof intervened, claiming the fund under the assignment described in the opinion. Heard on claimant's petition for a new trial, based on exceptions to a decision charging the garnishee.

(1)    TILLINGHAST, J.    Michael Greenan appears as claimant of the money attached in this case and opposes the charging of the garnishee on the ground that said money belongs to him by virtue of an assignment made by the defendant on the first day of July, 1892, and duly recorded. The case was tried before Rogers, J., in this division, jury trial being waived, who rendered a decision adverse to the claimant, and the case is now before us on the petition of said claimant for a new trial.

The facts as found, together with those which appear of record, are as follows:    On July 1, 1892, the defendant owed Greenan $70.76 for groceries, and he then gave him an assignment of his wages due and that might become due, for services to the garnishee, to January 1, 1893.    An agreement was made between the assignee and the defendant, at the same time, that the former was to continue to furnish the latter with groceries, to give him $11 a month to pay his rent with, and also from time to time during each month to let him have such other sums as he needed out of his earnings, and to apply the remainder of the wages collected on the old and the running account; and this agreement was carried out, the claimant crediting defendant each month with the balance which he retained out of defendant's wages

after advancing money for the rent, as aforesaid, and such other sums as he needed. After crediting defendant with the balance retained out of his wages, as aforesaid, if the assignee let defendant have any money before receiving the next month's pay, as he occasionally did, he would charge him on book account with the sums so advanced. These sums amounted to $12.25 during the six months covered by the assignment. The total amount earned by defendant during said time was $152.62. The total amount retained by Greenan and applied to defendant's account was $80.75, and the amount received by the defendant out of his earnings was $43.37, besides the $12.25 advanced by Greenan, as aforesaid, making the total amount received by defendant, during the time covered by the assignment, $56.62. Greenan furnished the defendant with groceries to the value of $58.87 after the making of the assignment. Said assignment is in the usual form of an assignment of wages, and purports to convey to the assignee all of the defendant's earnings while in the employ of James Brown, the garnishee, between the first day of July, 1892, and the first day of January, 1893. It does not contain the agreement above set out, or any reference thereto.

It is agreed that the plaintiff was a creditor of the defendant at the time of the making of the assignment; but the claimant testifies that he was ignorant of that fact.

The question presented for our determination, in view of these facts, is whether the assignment was fraudulent as against prior creditors, and particularly as against the plaintiff. The claimant contends that it was not; that fraudulent intent is always a question of fact, and will not be presumed when the facts and circumstances surrounding the transaction are in any way reconcilable with honesty and fair dealing, nor even where they are as consistent with an honest purpose as with an intention to defraud. While we do not question the general accuracy of this proposition of law, yet it is by no means absolute or without exception. For while a fraudulent intent in the making of a conveyance is ordinarily a question of fact, yet it is not always so. Indeed,

the author from whom said proposition was taken (Shinn on Attachment and Garnishment, § 114) adds immediately thereafter, in the same section, the following : "But when the defendant's conduct is not reconcilable with any other inference then that he intended to defraud his creditors by the transactions which are shown in evidence, fraud will be established." See also § 115 (d.). As said by Stiness, J., in *Austin* v. *Sprague Mfg. Co.*, 14 R. I. 476, "The purpose of a deed may be so written into it that it can neither be read nor carried into effect without disclosing a fraud incapable of explanation or defence; its provisions may be so inconsistent with real honesty as to be referrable only to a fraudulent intent." And again: "Fraud is the gist of an inquiry under the statute, and it must appear either from the nature of the transaction or the intent of the parties." In other words, we understand the law to be that if the intent to defraud appears, no matter whether it be from the deed itself or from extrinsic evidence, it will render the transaction void —fraud in law having the same effect in this regard as fraud in fact. The result in either case is the same, and it is to this which the law looks. As said by this court in *Eichenberg* v. *Marcy*, 18 R. I. 169, "It can make no difference to a creditor whether his debtor puts his property out of his hands with an *actual* fraudulent intent to hinder and delay him, or does so by a conveyance which, although made in good faith, that is, without in fact intending to defraud, yet must inevitably and necessarily result in defrauding him. In short, the law looks upon fraud in the means, with equal disfavor as upon fraud in the endeavor." See also *Jones* v. *Spear*, 21 Vt. 431; *Gere* v. *Murray*, 6 Minn. 305; *Lee & Co.'s Bank* v. *Talcott*, 19 N. Y. 146. In Bump on Fraudulent Conveyances, p. 71, the law is stated as follows: "There is no difference in principle between fraud in fact and fraud in law. Where the direct and inevitable consequence of an act is to delay, hinder, or defraud creditors, the presumption at once conclusively arises that such illegal object furnished one of the motives for doing it, and it is thus upon this ground held to be fraudulent. The result is the

same when the illegal design is established as a question of fact. The inquiry is as to the intention of the debtor. When it appears that among the inducements operating upon him there is an intention to violate any of the duties owing by him to any of his creditors, the transfer is tainted and may be set aside at the suit of any creditor."

(2)    In the case before us the defendant, while ostensibly conveying all of his wages to the claimant, yet had a secret agreement with the latter that he should collect the same and turn over to him so much thereof, from time to time, as he might need in defraying a part of his necessary household expenses. By keeping in debt to his assignee as he did, the result of this arrangement was to keep his wages constantly covered from attachment by other creditors, while he remained in the enjoyment of a considerable portion thereof, thereby gaining an advantage to himself at the expense of his creditors, which the law does not allow. Had the secret agreement aforesaid been written into the assignment, it would doubtless have rendered it fraudulent as to existing creditors; and we think it is clear that what could not be legally accomplished directly by the assignment ought not to be permitted to be accomplished by indirection. To hold such an assignment valid as against a prior creditor would be to hold that a debtor may place his earnings beyond the reach of attachment and at the same time receive a portion thereof for his own use.

The alarming extent to which creditors might be defrauded if such a transaction were held valid is readily conceivable. Take, for illustration, the case of a man whose wages amount to one hundred dollars per month, and who is indebted to various people. He makes an absolute assignment of his wages to his grocer, who, in consideration thereof, agrees to furnish him with groceries say to the amount of twenty dollars per month, and to turn over to him the balance of his earnings each month, to be used by him for the support of his family as he sees fit. Can it be seriously claimed for a moment that such a transaction is reconcilable with honesty and fair dealing, or even that it is as consistent with an honest purpose

as with an intent to defraud? Clearly not. On the contrary it is wholly inconsistent with an honest purpose, and needs but to be stated to be branded as fraudulent by all fair-minded men. That an assignment of wages to secure a present indebtedness, and also to secure the assignee for future advances of goods and merchandise, is valid and binding up to the amount of the debt secured, and of the goods actually furnished at the time of an attachment by trustee process, may be conceded. *Giles* v. *Ash*, 123 Mass. 353. But that it is good beyond this, as against creditors, so as to include money paid over to the assignor out of his own earnings, we feel constrained to deny. *Hickey* v. *Ryan*, 19 R. I. 399.

The case of *Schofield* v. *McConnell*, 119 Mass. 368, is much relied on by counsel for the claimant in support of his contention. In that case the court held that the payment of money by the assignee to or for the defendant, only in cases when it was necessary for his support, would not be *conclusive* evidence of fraud, although this fact, which was relied on in the trial court to impeach the validity of the assignment, was entitled to consideration as bearing upon its alleged fraudulent character. There, the court below had found, as matter of fact, that the assignment was not made, nor were the subsequent arrangements between the parties made with any intent on the part of the claimant or the defendant to defraud the creditors of the latter, but were made as the claimant properly required security, and that payments of money by the claimant to or for the defendant were only in cases of necessity for his support. The facts of the case were different from those in the case at bar, in that there was no agreement at the time of the making of the assignment that any part of the defendant's wages should be returned to him. It appeared, however, that subsequent to the making of the assignment the assignee usually paid over to the defendant, or for his use, each month, various sums of money, which were either charged to the defendant or deducted from the amount received for his monthly wages, the balance only being applied to the payment of claimant's account for groceries. The court held that under the facts disclosed the

assignment was not fraudulent as matter of law. While the case is somewhat different from the one before us on the facts, yet we fail to see that it is materially different in principle. The necessary result of the transactions between the assignor and assignee in that case was to hinder, delay, and defraud the defendant's creditors. And, this being so, we fail to see how the absence of an actual intention to defraud could properly control the decision. The case does not appear to have been very fully considered, no authorities are cited to sustain it, and we do not find that it has since been followed or referred to as an authority by the court in which it was rendered. At any rate, it does not commend itself to our judgment as being well founded in reason and principle, and therefore, while admitting it to be an authority for the claimant in the case at bar, yet we cannot assent to the doctrine which it declares.

Our conclusion is that the assignment in question is clearly fraudulent as against the plaintiff, and hence that the decision of the court in charging the garnishee was correct. The garnishee is charged in accordance with the decision.

*Claude J. Farnsworth*, for plaintiff.
*W. Waldo Robinson*, for claimant.