Citizens Bank of Milo, Appellee, v. Albert A. Frank et al., Appellants.

No. 40717.

February 17, 1931.

Rehearing Denied June 20, 1931.

O. M. Slaymaker, R. E. Killmar, for appellants.

Watson & Watson, O. C. Brown, C. W. Lyon, for appellees.

Faville, C. J.—The appellant Albert A. Frank had been indebted to the appellee bank for some time, and on November 13, 1928, the claim of said bank against said appellant was reduced to judgment in the sum of $19,559.82. On May 30, 1928, the appellant Albert A. Frank conveyed to his co-appellant Nellie O. Frank the real estate in controversy in this action, and also transferred to her certain personal property. The indebtedness out of which the appellee's judgment arose was incurred prior to said conveyance. On or about May 25, 1929, an execution issued on said judgment and was returned *nulla bona.* This action was commenced in June, 1929, to vacate and set aside said transfer of said premises and to subject the same to the payment of appellee's judgment. The lands in question consist of four tracts, a farm of 200 acres, a tract of 80 acres, a tract of 54 (52) acres, and a timber lot or tract of 28 acres.

I. We first consider the question of the claimed indebtedness of the appellant Albert A. Frank to his wife, which was the consideration in part for the conveyance. These parties were married in 1890. The evidence tends to show that the wife received $1000 and a cow from her father's estate in 1894, and that at or about said time she loaned this money to her

husband. About 1900 she received $1000 from her mother's estate, which she likewise loaned to her husband. It is the contention of the parties that the husband gave his wife notes representing these loans, bearing 6 per cent. interest, and that these notes were renewed approximately every ten years. On the said 30th day of May, 1928, the appellants visited the office of their attorney and at said time the deed in controversy was executed, and the husband at said time transferred to his wife personal property of the value of $4000. We are satisfied from the evidence that the wife loaned to her husband the money which she received from the estates of her parents. It is the contention of these parties that the wife held the notes of her husband, bearing 6 per cent. interest, and that same had been renewed from time to time, and that at the time of the transfer of the real estate and personal property from the husband to his wife, the latter surrendered the notes which she held against her husband and that he cancelled and destroyed the same. The trial court refused to accept the contention of the appellants with regard to the execution of said notes and their subsequent destruction at the time of the transfer in question. About the time of said transfer, and for some time prior thereto, the appellee bank had been pressing the appellant Albert for payment of its claim. Both of the appellants previously knew of this situation, and yet it is their contention that the notes, which would be of incalculable value in establishing the wife's claim of the husband's indebtedness to her, were intentionally destroyed. The court in its decree established the amount of the indebtedness from the husband to the wife on the basis of the original loan of $2000 and computed interest thereon at 6 per cent. simple interest, and fixed and determined the amount owing from Albert to his wife at the date of the transfer of said property at $5900. In this conclusion of the court we are disposed to concur.

II. A large amount of testimony was taken in regard to the value of the real estate in controversy. The trial court fixed the value of the entire real estate at $45800. In doing so, the court fixed the value of the 200-acre farm at $150 an acre, or $30,000; of the 80 acres at $4000; the 54 (52) acres at $10800; and the 28-acre tract at $1000. There appears to be no dispute with regard to the value of the personal property that was

transferred to the wife at the time of said conveyance being in the amount of $4000. The court fixed the total valuation of the real and personal property therefore at $49800. This valuation is criticized by the appellants. There was a sharp conflict in the testimony between the witnesses for the appellants and those for the appellee. Expert witnesses on values were offered by both parties, and, as is not unusual in such cases, there is a considerable variation in the testimony of the witnesses. We have examined all of this evidence with care. One witness for the appellee places the value of the 200-acre farm at $200, another at $155, another at $165, and another at $250. A witness for the appellants places the 200-acre farm at $150, another at $175, another at $160, and another at $145. On the whole we are impressed with the fact that in the main the witnesses for the appellee were in a better position to testify in respect to the land values than were some of the witnesses for the appellants. It is obvious that disinterested parties who have lived for a long time in the vicinity of the real estate and have been familiar with it and with land values in that locality for many years are more competent to testify as to the values of real estate than are witnesses from an adjoining county, who have only seen the tract in question at or about the time of the trial. Taking all the facts and circumstances into consideration, as shown by the record, we are disposed to acquiesce in the value of the several tracts of real estate as fixed by the trial court.

III. The undisputed evidence shows that the value of the personal property received by the wife from her husband at the time of the transfer in question was $4000, and that approximately one half of said property was exempt to the husband at said time. The court found the amount due from the husband to his wife, and also the amount of certain liabilities which the wife assumed and agreed to pay at the time of the conveyance, and the outstanding mortgages on the real estate, together with a mortgage executed the day of the transfer upon the real estate to counsel for said parties to secure attorney's fees. The court found that the total amount due to the wife, and the amount she assumed over and above the outstanding mortgages on the real estate, aggregated $12650. The trial court found that the wife had been paid $4000 of this total amount by reason of the transfer of the personal property to her,

leaving a balance of $8650, and the court held that the transfer of the real estate should be held to be a conveyance to the wife to secure said sum and that appellee's judgment should be established as a lien against said premises subject to said amount in favor of the wife. Appellants complain of the disposition made of the $4000 in this manner, it being contended that half of the $4000 of personal property was exempt to the husband at the time he transferred it to the wife, and hence should not be included. The question as to whether the personal property that was transferred to the wife was or was not exempt is not important at this point. The appellee is not seeking to set aside the transfer of the personal property, nor to subject any of the personal property in the hands of the wife to the satisfaction of its debt. The undisputed evidence shows that the wife received $4000 in value of the personal property. Whether it was exempt property or not is immaterial to the question at this point. The $4000 was value which she received on the indebtedness of her husband to her and for which she must give credit whether the property was exempt or not. The trial court properly charged her with the receipt of $4000 of property, and this was a *proper charge* in the accounting. There was no error at this point.

IV. It is contended that the court erred in establishing appellee's judgment as a lien against a 40-acre tract which appellants claim was exempt to the judgment debtor Albert and hence exempt in the hands of Mellie.

The appellant Mellie testified:

"I have not lived away from this county any part of the time since my marriage to Mr. Frank in 1890. Since my marriage to Mr. Frank his home and mine has been in Warren County, Iowa; and we have lived together as a family ever since that time. We moved onto the home eighty * * * in 1893, I believe. That is the east eighty of the 200 acres, and we acquired the 120 acres west of it at different times between 1892 and 1900, I presume; I can't tell exactly; at least as early as 1900. Q. State whether or not ever since that time you have intended to make any other place your home and homestead? A. We never considered any other place our home. Q. State whether you have since that time claimed that as your home and homestead? A. Yes, sir. Q. What part do you claim of this land,

and have you claimed as your home and homestead? A. The south part of this east eighty and the south *twenty of the* hundred and twenty. Q. And do you now claim that as your home and homestead? A. Yes, sir. * * * The land is outside of town and not in an incorporated town; there are buildings on it in which my husband and family live and the buildings used in connection with it. There was a part of the time that we were in Indianola. We came up here to send my boy to school; during all of that time, we kept a part of that house, we kept a large living room and library below and a bed room above. We kept that part furnished, and lived there a part of the time. One year we were there most of the year, and were there off and on all of the time. Q. Did you ever have any intention of abandoning that place as your homestead and home? A. No, sir. Q. State whether you have had any other home for thirty years. A. Not to make it permanent.''

Appellant Albert testified:

''Q. Where have you claimed your homestead for the last twenty-eight years or prior to that time? A. Right down at the farm. On the south end of the east eighty, *twenty* acres of the south end and the balance right west of it, twenty acres of the forty west, the southeast forty. Q. How long have you claimed that as your homestead? Ever since I owned it; we have owned the land ever since 1893. We were up here at Indianola for a time. Q. Where did you claim your home during the time you were up here, your homestead? A. Well, we called that down there home. We had a part of the house to occupy; we had the living room in the south part, and the room off from that, and a room up stairs. We had those rooms furnished all of the time we were up here; we moved down there on the farm quite a good deal in the summer time, not so much in the winter time, but would go down there and stay a week at a time, and sometimes be there at nights. Q. When you came up there did you intend to make this your home permanently or did you intend to go back to the farm? A. No, sir. As to what I mean by that, you asked me if I intended to make my home up here, and my answer to that was no, sir.''

On cross-examination Albert testified:

"I did vote in Indianola in 1926, and voted several times here; I did not vote every year I was up here but I did two or three years. I did not, in order to vote, declare my residence here. I voted here. As to whether I took an oath that I was a resident of the 4th Ward, Indianola, Warren County, Iowa, before I was allowed to vote, they never asked me. I came to Indianola for the school here; I came up here, my boy was going to school. He got out of school in 1922, and we stayed about five years longer and went back on the farm in January, 1927."

The son of the appellants testified:

"I live in Liberty Township on the farm with my folks and have lived there since March, 1927; I am thirty-one years of age, a married man and have been married for eight years. * * * I know about them retaining a part of the rooms in the house down there on the place during the time we were here in Indianola; I was going to school at the time, and in vacation we were there on the farm and staid there, lived there. We occupied two rooms down stairs and, I think, two rooms up stairs, and they were kept furnished all of the time. As to my folks living there in those rooms, at times, they would go down and stay, maybe a week at a time. Q. Did you hear them say what their intention was, as to whether they expected to retain and keep it for a home? Q. What would you say as to whether they intended to keep that? A. They did. They said as soon as I got away from Indianola, away from school, they intended to go back to the farm. Plaintiff moves to strike the answer as a conclusion and hearsay. * * * I was married in 1922; my wife and I never occupied those rooms down on the farm; we live in the small tenant house on the south twenty of the southeast forty; we were working for mother, after the conclusion of the partnership with father. During that time my parents were living on the farm. I have been living there with my wife in the tenant house since March, 1927. I did not finish my full course of schooling at Indianola, I quit in 1922."

A daughter of appellants testified:

"My father and mother always retained a part of the house while they were in Indianola; they retained one large room and

the library and one bed room up stairs; they kept them furnished and occupied them while on the farm. Q. What did you hear your folks say as to whether they expected to retain that as their home? A. I have often heard them speak of their farm as being the only place that would be home to them, and that they hoped to make that their home the rest of their lives.''

A poll book was offered in evidence which shows that appellant Albert voted in Indianola at the election on November 2, 1926, and was one of the judges of said election. The appellants left the farm in 1916, and returned ten years later.

The foregoing comprises all of the evidence on the question of the homestead.

The general rules of law applicable to homestead exemption rights are well established. The difficulty lies in their application to the facts of any given case. See, Maguire v. Hanson, 105 Iowa 215; Fardal v. Satre, 200 Iowa 1109.

At this point the ultimate question is whether or not there was, under this record, an abandonment of the homestead. In Fardal v. Satre, supra, we said:

''Where the removal is for a temporary purpose, and there is a fixed and settled intention, continuously and in good faith held, to return to the homestead, there is no abandonment. Repenn v. Davis, 72 Iowa 548; Boot v. Brewster, 75 Iowa 631; Ayers v. Grill, 85 Iowa 720; Zwick v. Johns, 89 Iowa 550; Robinson v. Charleton, 104 Iowa 296; Maguire v. Hanson, supra. Where the actual occupancy of the homestead has ceased, there arises a presumption of abandonment, and the burden is upon the one claiming the homestead right to show that there was a fixed and definite purpose to return. Newman v. Franklin, 69 Iowa 244; Maguire v. Hanson, supra; Conway v. Nichols, 106 Iowa 358; Vittengl v. Vittengl, 156 Iowa 41; Shaffer v. Miller, 195 Iowa 891. The question is one of intention, and that must usually be determined from the testimony of the parties, in the light of the surrounding circumstances.''

The mere fact that Albert voted in Indianola is not of itself conclusive proof of an intention to abandon the homestead. Robinson v. Charleton, 104 Iowa 296; Illinois Oldsmobile Co. v. Miller, 199 Iowa 894. Voting is, however, a very strong circumstance tending to show the intention of the party and

the fact that the voting was done deliberately and not merely accidentally or ignorantly is a matter for consideration. In this case the appellant did not merely vote at one election, but "voted several times." He says: "I did not vote every year I was up here (at Indianola), but I did two or three years." Voting is a very strong circumstance tending to show a permanent change of residence. Robinson v. Charleton, supra; Benbow v. Boyer, 89 Iowa 494.

If the appellants had an intention to return to the farm when the son's schooling was completed, they did nothing whatever to carry out that intention for a period of five years thereafter, and during *that* period the appellant Albert voted in Indianola as a resident of said town. The fact that appellants left some furniture in the house on the farm or that they went there with more or less frequency, is by no means controlling.

Under this record we agree with the lower court that the appellants have failed to carry the burden of establishing that at all times after leaving the farm they had no intention of abandoning their homestead therein.

V. Appellant Mellie contends that the court should have ordered the property sold and the proceeds divided. This appellant asked no affirmative relief and does not appear to have called this matter to the attention of the trial court. Furthermore the decree provides that the rights of the parties in the premises are fixed and the appellee "may enforce its judgment by the sale of said premises on execution."

The decree of the court should be in all respects affirmed. It is so ordered.—Affirmed.

STEVENS, DE GRAFF, ALBERT, and WAGNER, JJ., concur.