GRIMES SAVINGS BANK, Appellee, v. MAGGIE McHARG, Appellant. No. 40599.

May 5, 1931.

Rehearing Denied January 14, 1932.

C. E. Hunn and H. S. Hunn, for appellant.

J. G. Myerly, for appellee.

Per Curiam.—This is the third appearance of this cause in this court. The former appeals are reported in 197 Iowa at 1393, and 204 Iowa at 322.

The appellee sues on three promissory notes aggregating the principal sum of $5000. The notes were made payable to "myself." The original notes were given for subscriptions to stock in the Associated Packing Company. The notes were endorsed to the appellee, who claims to be a holder in due course.

I. Upon this appeal the appellant contends that the

court erred in refusing to sustain the appellant's motion for a directed verdict and for judgment notwithstanding the verdict, on the ground that, as contended by appellant, the record affirmatively shows that the appellee is not the real party in interest and hence has no right to prosecute this action. This contention of the appellant arises out of the following state of facts. The notes in suit were executed in 1919 and became the property of the appellee bank some time prior to April 10, 1920. On said last-named date certain of the stockholders and trustees of the appellee entered into a certain written contract which was discovered in the minute book of the appellee bank. Said written instrument recites "that it is possible that certain notes now owned by said bank may be delayed in payment partially on account of company to which some of these were given being now in the hands of a receiver, and it being the earnest desire of each of the undersigned that the surplus and undivided profits of the Grimes Savings Bank be maintained unimpaired pending the collection of any of these notes if payment is delayed or suit is necessary. That as a means of protection and safety and to be prepared for any delay or emergency that might be occasioned by the non-payment of said notes, the undersigned have this day deposited with W. J. Stewart as Trustee, notes, certificates of deposit or other first-class securities as follows:" (describing securities).

The agreement further provides: "Should it be deemed necessary or desirable to charge off from the books of said Grimes Savings Bank any of the notes as above referred to, then said W. J. Stewart, Trustee shall deposit with said bank the desired amount of notes, certificate of deposit or securities deposited with him as Trustee as herein stated and shall receive from said bank the note or security so charged off and shall have same assigned to him as trustee. Steps shall be taken to collect said notes either by the Grimes Savings Bank or by said Trustee and all proceeds shall be applied in cancellation of said note or security of the parties hereto sold and delivered to said Grimes Savings Bank and for which the said note or security is taken in exchange. * * * the whole purpose and intention of this agreement and procedure being to maintain the capital and surplus of said bank intact and to provide emergency paper that shall act as a safety valve if needed; the intention and understanding

that each of the parties hereto shall eventually be protected and saved from loss of said bank if at all possible, and that if any loss whatever should occur, it shall be prorated jointly among the signers hereto in proportion to the amount so deposited with said Trustee as hereinbefore stated.''

In said minute book there was also found a copy of a letter purporting to be written by the cashier of said bank to the superintendent of banking, dated January 3, 1921, which said letter is in part as follows:

''In accordance with the instructions of The Banking Department dated September 17, 1920, in which was enumerated a list of notes which were more than six months past due, the directors of The Grimes Savings Bank in meeting assembled have satisfied all the notes in the following manner:

''$10,900 was covered by charging undivided profits and $20,000 covered by delivery of certificates of deposit in the amount of $15,000 and notes of Wm. F. Channon and Ray L. Channon in the amount of $5,000 to The Grimes Savings Bank. Said $20,000 representing deposit by A. B. Shawver.''

Said letter contains a list of the notes which it recites were so ''charged off,'' and it appears from the record that the notes involved in this suit were included among those referred to in said letter.

An officer of the bank, among other things, testified as follows:

''Q. What was done with the three notes, Exhibits 'A,' 'B' and 'C,' after they were charged out of the current assets of the bank? A. We hold them, trying to collect them. Q. Who holds them? A. The bank itself, it is the property of the bank just the same. * * * They were not assigned, they are the property of the bank. If they should be collected we might receive the benefit and we might not. Q. Who would determine that? A. The banking department.''

This action was commenced on August 26, 1920. Just what entries, if any, were made in the books of the bank with respect to the disposition of the notes in suit does not clearly appear from the record. Appellant places great reliance upon the statement in the letter of the bank officer to the superintendent of

banking to the effect that the notes in suit had been "charged off." It is the contention of the appellant that when the parties furnished the money under the contract of guaranty, and the bank "charged off" the notes out of its current assets, it deprived the appellee of title to said notes and hence of being the real party in interest to further prosecute said action.

The difficulty with appellant's contention at this point is twofold: .(1) It does not appear that the bank parted with title to said notes. It did receive cash and securities from certain officers who had agreed to maintain the capital and surplus of the bank "as a means of protection and safety," and who thus performed their contract. But there is no evidence in the record that the title to said notes passed from said bank or that it ceased to be the owner of the same, even though, in the language of the officer in his letter to the superintendent of banking, the notes were "charged off" as current assets of the bank. But (2), aside from this, the appellee was entitled to prosecute the action which had already been begun in its name against the appellant.

Code section 10991 is as follows:

"No action shall abate by the transfer of any interest therein during its pendency, and new parties may be brought in, as may be necessary."

This statute is directly applicable to such a situation as is disclosed in the instant case. This statute has come down from the Code of 1851 in somewhat varied form.

In Emerson v. Miller, 115 Iowa 315, we construed this statute and said:

"It has been repeatedly held that the transfer of an interest in an action pending does not necessitate the substitution of a new party for the one in whose name the action has been commenced."

In Mayo v. Halley, 124 Iowa 675, it appeared that the plaintiff in said action, during its pendency assigned said action to her attorney. We said:

"The thought of counsel seems to be that after the assignment the case should have been prosecuted in the name of the

attorney as substituted plaintiff. But this is not the provision of the statute. A transfer of interest during the pendency of the action does not abate the action. Code, section 3476 (Code, 1927, section 10991). And it may be prosecuted to judgment in the name of the original plaintiff. Emerson v. Miller, 115 Iowa 315.''

In Markley v. Telegraph Co., 159 Iowa 557, the same rule was recognized. In that case we said:

''The defendant did not ask for a change in the party plaintiff, and it had not the right, under section 3476 (Code, 1927, section 10991), to plead such by way of defense or abatement. Mayo v. Halley, 124 Iowa 675, and cases therein cited. There was no error in striking from the record the evidence upon the question of ownership, or in not stating that fact as an issue to be determined by the jury.''

Upon the record, we are of the opinion that the court did not err in overruling the appellant's various motions which challenged the right of the appellee to further prosecute the action because it was not the real party in interest.

II. The appellant contends that the court erred in permitting the appellee to introduce in evidence the direct and cross-examination of certain witnesses who had testified upon the former trial of this cause. Appellant contends that the issues had been changed in the interim, and that the appellant was deprived of the right of cross-examination of said witnesses. It appears that one of said witnesses is dead and the other was not present at the trial. It also appears that the entire evidence, both on direct and cross-examination, was offered by the appellee.

Code section 11353 provides for the use of a transcript of the former testimony of a witness under such circumstances as were disclosed in the trial of the instant case.

We fail to find any basis for the appellant's contention that there was error in the admissibility of the transcript of the testimony of said witnesses upon the showing made. Lanza v. Quarry Co., 124 Iowa 659; Van Norman v. Modern Brotherhood, 143 Iowa 536.

III. The appellant contends that the evidence was not

sufficient to show that the bank had no knowledge or notice of the fraud complained of. The evidence tends to show that all the officers and agents of the appellee bank who actually participated in the purchase of the notes had neither notice nor knowledge of the fraud and bad faith charged. When such fact is shown by all of the officers or agents who had any actual participation in the transaction it is not required that similar testimony of a want of knowledge be shown on the part of officers and agents of the purchasing bank when such officers and agents had nothing whatever to do with the transaction involved in the purchase of the notes. Robertson v. U. S. Livestock Co., 164 Iowa 230; Perry Savings Bank v. Fitzgerald, 167 Iowa 446.

Error does not appear at this point.

▆ IV. The court in its instructions submitted to the jury two forms of verdict. Form No. 1 so submitted was as follows:

"We, the jury, find for the plaintiff, and assess the amount of its recovery at $............ and interest dollars.

............................................................
Foreman."

The jury returned a verdict by inserting in said form, after the dollar sign, the figures 5000. The court entered judgment on said verdict and in so doing computed the amount of interest, making the total amount of the judgment the sum of $9444.05. Of this appellant complains. The affidavits of the jurors were filed reciting that it was the intention to find for the plaintiff in the aggregate amount of the principal sum of said notes and to add thereto the full amount of interest accrued on said notes at the date of the verdict. Whether said affidavits were properly receivable and should be considered is quite immaterial. The verdict of the jury was readily understandable and the amount of the judgment to be entered thereon was a mere mathematical computation. That a verdict in this form is sufficient to authorize the court to compute and add the interest in entering judgment has been expressly decided by this court. McGregor, Laws & Blackmore v. Armill, 2 Iowa (Clarke) 30; Stevens v. Campbell, 6 Iowa 538; Armstrong v. Pierson, 15 Iowa 476. See Code sections 11517-11518.

V. Other errors relied upon for reversal are either not ar-

gued or are without merit. Under the rules of this court, "any error relied upon for reversal, not argued in the argument in chief, shall be deemed to have been waived." Rule 30.

The appellant properly states: "The one primary question in this case is whether or not the plaintiff owns the notes in suit." As we have shown, the record fails to show that the appellee is not entitled to maintain this action under the facts and circumstances shown in the record in this case.

We find no error in the record requiring the reversal of the cause, and resultantly the judgment appealed from must be and it is—Affirmed.

All Justices concur.