GRIMES SAVINGS BANK, Plaintiff, Appellee, D. W. BATES, Receiver, Substituted Plaintiff, Appellee, v. MAGGIE McHARG et al., Defendants, Appellants; J. G. MYERLY, Intervener, Appellee.

No. 43927.

DECEMBER 14, 1937.

REHEARING DENIED APRIL 8, 1938.

J. G. Myerly, for Grimes Savings Bank and J. G. Myerly, intervener, appellees.

J. B. Ryan, for D. W. Bates, receiver, appellee.

Charles E. Hunn, and Hiram S. Hunn, for appellants.

STIGER, J. During the year 1919, Maggie McHarg subscribed for stock in the Associated Packing Company in the amount of $25,000 and gave her notes in payment for the stock. Three of the notes aggregating $5,000 were purchased by Grimes Savings Bank on December 19, 1919. In August, 1920, the bank brought suit on the notes. There were three trials of this law action and three appeals to the supreme court. The last trial resulted in a verdict against Maggie McHarg on January 29, 1930, in the sum of $9,444.05. This judgment was affirmed on appeal.

On September 24, 1924, after a reversal of the judgment in favor of defendants in the first trial, Mrs. McHarg in consideration of "love and affection and the promise of the grantee to support and maintain and keep the grantor as long as she lives", conveyed the S. ½ of the S. E. ¼ of section 15 except the N. 24.54 acres thereof and the N. E. ¼ of the S. W. ¼ of section 15, all in township 80 N., range 25, Polk County, to her daughter, Ethel McHarg Kuefner, with whom she was then living in Ethel's home. This deed was not recorded until October 8, 1925. On October 8, 1925, Ethel Kuefner and husband conveyed the above real estate to C. E. Hunn as trustee, who testified that the conveyance was for the benefit of Mrs. McHarg. This latter deed was recorded April 7, 1932. The deed to the 96 acres from Mrs. McHarg to Ethel Kuefner is referred to in the record as Exhibit A. The deed to the same land from Ethel Kuefner and husband to C. E. Hunn, trustee, is referred to as Exhibit I. On September 30, 1930, Grimes Savings Bank brought this action against Maggie McHarg and the grantees in the deeds to set aside the conveyances alleging that they were made without consideration and with the intent to hinder, delay and defraud creditors and especially to defraud plaintiff and prevent it from collecting the amount of its judgment. J. G. Myerly, intervener, joined with plaintiff in its petition to set aside the deeds.

The trial court found for the plaintiffs, set aside the conveyances from Mrs. McHarg to her daughter, Ethel, Exhibit A and the deed from Ethel Kuefner and husband to C. E. Hunn, trustee, Exhibit I, and subjected the real estate to the payment of the judgment on the notes.

■■■ Appellants claim there was no fraud in the transaction

and that there was an adequate consideration for the deeds. The consideration named in the deed, Exhibit A, is love and affection and the provision for future support. It is well settled in this jurisdiction that a conveyance of property in consideration of future support is voluntary as to existing creditors. A debtor will not be permitted to place his property beyond the reach of his creditors under an agreement that it will be used for his benefit. His duty is to pay his debts rather than provide for his support. Seekel v. Winch, 108 Iowa 102, 78 N. W. 821; Mallow v. Walker, 115 Iowa 238, 88 N. W. 452, 91 Am. St. Rep. 158; Harris v. Brink, 100 Iowa 366, 69 N. W. 684, 62 Am. St. Rep. 578.

█▉█ A conveyance in consideration of love and affection is voluntary and will not support conveyances as against existing creditors. Shaw & Kuehnle v. Manchester, 84 Iowa 246, 50 N. W. 985; 27 C. J. 571, 572.

█▉█ The conveyance being voluntary, it was constructively fraudulent as to the bank unless the conveyance was sustained by defendants by showing the grantor retained sufficient property to pay the grantor's debts existing at the time of the conveyance. The burden of proof of showing that the grantor, McHarg, retained sufficient property to pay her debts was on defendants. Dolan v. Newberry, 200 Iowa 511, 202 N. W. 545, 205 N. W. 205; Campbell v. Campbell, 129 Iowa 317, 105 N. W. 583. Mrs. McHarg, in addition to her indebtedness to the plaintiff, owed the Associated Packing Company for the stock, and substantially all the property Mrs. McHarg possessed, other than the property conveyed, was a $6,000 note of Frank Prunty. The evidence is that in 1924, the year the deed was given, Prunty was insolvent. The appellants having failed to sustain their burden, the deed was constructively fraudulent as to the plaintiffs.

█▉█ The appellants contend that the consideration for the deed was not only future support, but support furnished the grantor prior to the execution of the deed, Exhibit A. They assert that an oral arrangement was entered into between Mrs. McHarg and her daughter on some day during the years from 1912 to 1919 and prior to September 24, 1924, under which Mrs. Kuefner was to keep and support her mother in consideration of the conveyance of the 96 acres. It is not alleged when the deed was to be given, but it was in fact given on September 24, 1924, after a reversal in the Supreme Court of the judgment in favor

of Mrs. Maggie McHarg obtained in the first trial of the law action on the notes. The deed states that the consideration is "the promise of grantees to support and maintain and keep the grantor as long as she lives". Appellee relies on the rule that if the consideration consists of a specific promise by the grantee and the consideration is clearly expressed and is contractual in its nature, such as a promise by a grantee to do a specific thing, it is no more subject to modification by parol or extrinsic evidence than any other part of the contract. Slump v. Blain, 177 Iowa 239, 158 N. W. 491; Blumer v. Schmidt, 164 Iowa 682, 146 N. W. 751; Banwart v. Shullenburg, 190 Iowa 418, 180 N. W. 190. However, it is a fundamental doctrine that the rule does not apply to acts between a stranger to the instrument and parties to the instrument. As stated in the case of Aultman Engine & Thresher Co. v. Greenlee, 134 Iowa 368, 374, 111 N. W. 1007, 1009:

"And where the stranger to the instrument is thus free to vary or contradict it by parol evidence, his adversary, although a party to it, must be equally free to do so."

See Nissen v. Sabin, 202 Iowa 1362, 212 N. W. 125, 50 A. L. R. 1216; Peters v. Goodrich, 192 Iowa 790, 185 N. W. 903. Under this latter rule the appellants had the privilege of proving that Mrs. McHarg and her daughter Ethel Kuefner entered into such arrangement sometime between the years of 1912 and 1919 and prior to September 24, 1924, the date of the deed. If such contract was, in fact, entered into prior to the time the appellee bank purchased the notes, the bank would not be an *existing creditor* at the time of the contract though the deed, Exhibit A, to the 96 acres was given after the bank's claim originated. Farmers & Merchants Bank v. Daiker, 166 Iowa 728, 148 N. W. 1020.

Neither Ethel Kuefner nor Maggie McHarg testified at the trial. Their failure to testify is an unfavorable circumstance and gives rise to an inference that if they had been called on and testified as witnesses in the case, their contention would not have been aided by their testimony. Shideler v. Naughton, 163 Iowa 616, 145 N. W. 280; Glasgow v. Nicholls, 124 Wash. 281, 214 P. 165, 35 A. L. R. 419; 22 C. J. 121.

To establish the arrangement, the appellants rely on the testimony of Albert Kuefner, husband of Ethel Kuefner, and

C. E. Hunn, their attorney. Albert Kuefner did not testify that the contract relied on by defendants was entered into. No such arrangement was referred to in his examination. The most that can be gathered from his testimony is that the rents from the 96 acres were used for the support of the family, that is, Mrs. Mc-Harg and Kuefner and his wife. Mr. Hunn does not purport to have been present when the arrangement was made. His testimony was hearsay evidence. He states that when the deed was executed in September, 1924, that he was told of the arrangement by the parties involved. The witness stated, "As I recall it they advised me that their agreement was made in 1915 or 1916, some where back there."

A noticeable inconsistency in the claims of appellants in regard to this alleged contract is that they insist that Maggie McHarg was never the real owner of the N. E. ½ of the S. W. ¼ of Section 15, which is a part of the 96 acres, and yet, disregarding such assertion, allege that the services rendered were in consideration of the conveyance of the entire 96 acres by Maggie McHarg to Ethel Kuefner who paid no taxes on the property until after 1924. The appellants entirely failed to establish the contract and the appellee bank was an existing creditor at the time of the conveyance. As above stated, the deed being voluntary, was constructively fraudulent as to appellees.

█▌█ Appellants further contend that the judgment at law upon which this creditor's bill is based is void because the promissory notes, which were the subject matter of the litigation, were never delivered to the clerk for cancellation as required by Code section 11582-c1, and therefore there was neither a valid judgment nor a lien when this suit was commenced. Code section 11582-c1 is in the following language:

"11582-c1. Surrender of written obligations. Unless otherwise ordered by the court or judge, the clerk of the district court shall not enter or spread upon the records of his office any judgment based upon any promissory note or notes or other written evidence of indebtedness, unless the note or notes or other written evidence of indebtedness are first delivered to the clerk."

J. G. Myerly, intervener, and attorney for the bank in the litigation over the notes, testified that immediately upon the return of the verdict in the last trial he delivered the notes to the

clerk of the district court. No one denies this testimony. While the notes are not marked "cancelled" the undisputed evidence shows that the notes were impounded during the last trial; that Myerly delivered the notes to the clerk at the conclusion of the trial; that the notes were Exhibits in the case and a transcript of the record was filed March 31, 1930.

C. E. Hunn, who was one of the attorneys for the defendants in the law action, testified for the defendants that after the return of the verdict the notes were either in Myerly's possession or in the possession of Hunn & Hunn to be used in the case of appeal and that they were eventually certified to the Supreme Court and delivered to the clerk of the supreme court.

We held in the case of Selby v. McDonald, 219 Iowa 823, 259 N. W. 485, that where the record shows that the notes were marked as Exhibits and introduced in evidence and a transcript of evidence filed, which necessarily included the exhibits, there is a presumption that the statute was complied with and the notes delivered to the clerk. It may be presumed that the clerk did not enter the judgment until the notes were delivered to him. We find that the appellants signally failed to prove that the notes were not delivered to the clerk.

 Another defense offered by appellants is that the judgment on the notes was fraudulently obtained because the plaintiff's testimony was that the notes were unpaid, whereas at the time the testimony was given the notes had been paid by A. B. Shawver to the Grimes Savings Bank and neither the plaintiff nor intervener have any rights in the judgment and no right to maintain this litigation because the judgment belongs to Shawver.

The claim of the appellants is that Mr. Shawver became the owner of the notes through the payment of $20,000 to the bank pursuant to an agreement between the stockholders and trustees of the bank entered into April 10, 1920. Shawver paid $20,000 in cash and $10,900 was taken from the undivided profits of the bank which sums were used to take the place of notes aggregating $30,900, among which were the McHarg notes which had been objected to by the banking department. The notes were "charged off" by the bank. At the time of the payment of the $20,000, Mr. Shawver was given the following guarantee:

"Grimes, Iowa, December 13, 1920.

"A. B. Shawver, having signed a certain guarantee in favor

of W. J. Stewart, Trustee, for $20,000.00 to be paid as therein provided. Acknowledgment of payment of said $20,000.00 to Grimes Savings Bank as provided in said guarantee is hereby acknowledged and said A. B. Shawver is hereby released on said guarantee and the undersigned hereby pledge themselves to protect him as to any further claims.''

It does not appear that Shawver ever made any claim to the McHarg notes or to any of the other charged off notes or that he was entitled to the notes because of the payment under the agreement. All that he stipulated for was protection against further claims. The officers of the bank testified that the bank was to hold the charged off notes which were delivered to Mr. Stewart, president of the bank, and that they were not disposed of.

In the case of Grimes Savings Bank v. McHarg, 213 Iowa 969, 236 N. W. 418, this agreement of April 10, 1920, was considered. In that case Mrs. McHarg contended that when Shawver furnished the money under the contract and the bank charged off the notes, it deprived the bank of title to the notes. Relative to this contention, the court stated at p. 973:

''The difficulty with appellant's contention at this point is twofold: (1) It does not appear that the bank parted with title to said notes. It did receive cash and securities from certain officers who had agreed to maintain the capital and surplus of the bank 'as means of protection and safety,' and who thus performed their contract. But there is no evidence in the record that the title to said notes passed from said bank or that it ceased to be the owner of the same, even though, in the language of the officer in his letter to the superintendent of banking, the notes were 'charged off' as current assets of the bank. But (2), aside from this, the appellee was entitled to prosecute the action which had already been begun in its name against the appellant.''

It further appears that the defense interposed by Mrs. McHarg that Mr. Shawver purchased the notes from the bank and was the owner of the notes at the time of the commencement of the law action was offered in the law action and such contention adjudicated against her. The appellants failed to establish this defense.

■■■ Another contention of appellants is that, if the deeds are set aside, 40 acres of the property included in the deeds is the homestead of Mrs. McHarg.

The property involved in this suit was purchased by William McHarg, husband of Maggie McHarg, in 1909. The family lived on this land a short time, and, as we understand the record, William McHarg then purchased a residence property in Grimes, where the family resided until his death in 1911. After his death, the Grimes property was sold and apparently Mrs. McHarg then moved back to the farm property which she received in the division of the estate. Her daughter Ethel lived with her until 1915, when she married Kuefner. Mr. and Mrs. Kuefner continued to reside with Mrs. McHarg until November, 1917, when Kuefner and his wife and Mrs. McHarg moved to Ethel's farm. Mrs. McHarg continued to live with the Kuefners on Mrs. Kuefner's property before and after the conveyances and never returned to her home on the S. ½ of the S. E. ¼ of section 15.

In order to preserve her homestead exemption when she went to live with her daughter it was necessary for Mrs. McHarg to have a fixed, specific and abiding intent to return to her homestead. No evidence of such an intent on the part of Mrs. McHarg was offered by the defendants. As above stated, neither Mrs. McHarg nor her daughter testified in the case. Citizens Bank of Milo v. Frank, 212 Iowa 707, 235 N. W. 30

In 1924, she conveyed the real estate in which she now claims a homestead right to her daughter. The burden was upon the defendants to establish Mrs. McHarg's homestead rights in the property and this claim of defendants must fail for lack of proof.

■■■ Appellants urge that, though the conveyance is voluntary, it must be sustained to the extent of the amount or value of the support actually furnished Mrs. McHarg.

The rule is that where there is no express or actual fraud, that is, where there is only constructive fraud, and the parties have acted in actual good faith, the grantee is accountable to creditors only for the excess in value of the property over the consideration actually paid. Harris v. Brink, 100 Iowa 366, 69 N. W. 684, 62 Am. St. Rep. 578; Farmers and Merchants Bank v. Daiker, 166 Iowa 728, 148 N. W. 1020; Malcolm Savings Bank v. Mehlin, 200 Iowa 970, 205 N. W. 788.

The question is, Did the grantee, Ethel Kuefner, act in good faith and without actual fraud? If so, she is entitled to protection to the amount of the consideration paid.

We think the following facts and circumstances preclude recovery of the consideration paid by the grantee.

The conveyance, Exhibit A, was executed in September, 1924. It was not recorded until October 8, 1925. On October 8, 1925, the grantee and her husband conveyed the 96 acres to C. E. Hunn as trustee. This deed, Exhibit I, was not recorded until April 7, 1932. On April 7, 1932, Ethel Kuefner and her husband entered into a trust agreement, Exhibit M, with C. E. Hunn, trustee, for the benefit of the creditors of the Kuefners and on the same date executed two deeds to Hunn as trustee to all of their real estate, not including, however, in these two deeds nor in the trust agreement, the 96 acres which were conveyed to Hunn as trustee seven years earlier.

The pleadings of the appellants state that the conveyance of the 96 acres to Hunn as trustee by Exhibit I on October 8, 1925, was also for the benefit of creditors of the Kuefners and was conveyed to the trustee as the absolute property of the grantors. The evidence on this issue does not support the pleadings.

Albert. Kuefner testified that after the execution of the trust agreement and the conveyances in 1932 of the Kuefner property, the income from such property was paid to the trustee for the benefit of their creditors but the income from the 96 acres was always used for the benefit of the family and Mrs. McHarg. This testimony suggests that the 96 acres were not conveyed to Mr. Hunn, trustee, in 1925 for the benefit of the Kuefner creditors. The witness further testified that in *1925,* none of the creditors of the witness and his wife were pressing them; that "myself and wife, Ethel, joined in a deed to Mr. Hunn in October, 1925 for this 96 acres. I don't know how I happened to go down there that time. *I don't remember how we came to give Mr. Hunn that deed at that time.*" If the deed to the 96 acres to Mr. Hunn, trustee, was conveyed as the property of Kuefner for the benefit of the Kuefner creditors, the witness Kuefner would have been aware of that fact.

Mr. Hunn, attorney and trustee, testified that when Exhibit M was executed in April, 1932, the deed, Exhibit I to the 96 acres dated October 8, 1925, and the deeds executed in April,

1932, to him as trustee for creditors were delivered to him on April 7, 1932, and immediately recorded, that is, his testimony is that the deed, Exhibit I was not delivered to him until 7 years after its execution. He further testified that the deed, Exhibit I was for the benefit of *Mrs. McHarg*. He then testified:

"Q. That deed (Exhibit I) was made for the protection of Mrs. McHarg, you say, the deed to you? A. Oh, I think so."

▐█▌ From the foregoing circumstances it appears that the deed, Exhibit A, was withheld from the record until October 8, 1925, and the deed, Exhibit I, to C. E. Hunn, trustee, withheld from the record for 7 years and were at all times for the benefit of Mrs. McHarg and that she had reserved therein a secret trust for her benefit. The grantor apparently conveyed the property absolutely to her daughter, yet had a secret understanding with her daughter that the land would be held for her ultimate benefit. A secret trust for a grantor's benefit is a badge of fraud. Such a transaction can not be said to be as consistent with an honest purpose as with an intent to defraud. Robinson v. McKenna, 21 R. I. 117, 42 Atl. 510, 79 Am. St. Rep. 793; Strong v. Lawrence, 58 Iowa 55, 12 N. W. 74.

The deed, Exhibit A, was made shortly after the judgment in the law action in favor of Mrs. McHarg had been reversed in the Supreme Court at which time Mrs. McHarg was living with her daughter. At that time, Mrs. McHarg was heavily indebted to the Associated Packing Company which fact must have been known by the daughter who had also invested in the stock of said company.

Mrs. McHarg was 75 years of age when she conveyed the 96 acres in consideration of future support. This land was valued at $150 per acre at the time of the conveyance. The transfer was made while the suit was pending. Neither the grantor nor the grantee in the conveyance, defendants in this action, testified.

Mr. Hunn, trustee, testified that during the time Exhibit I was in his custody and between October, 1925, and April, 1932, he did not take any crops from the 96 acres for the benefit of the creditors of the Kuefners and that the crops from said land were used for the benefit of Kuefner's family and Mrs. McHarg. The witness had also testified that Exhibit I was for the benefit of Mrs. McHarg.

We conclude from the foregoing facts and circumstances,

that Ethel McHarg Kuefner was a party to transactions evidenced by Exhibits A and I knowing that they were entered into for the purpose of hindering, delaying and defrauding the creditors of Maggie McHarg, her grantor, and is not entitled to a lien or interest in the land to the extent of the value of the services rendered.

Appellants urge the proposition that neither Grimes Savings Bank nor J. G. Myerly, intervener, has a right to maintain this action. We have held to the contrary in Grimes Savings Bank v. McHarg, 217 Iowa 636, 251 N. W. 51, and Grimes Savings Bank v. Jordan, 224 Iowa 28, 276 N. W. 71. Other errors assigned by appellants are disposed of by our rulings on the errors considered.—Affirmed.

HAMILTON, C. J., and DONEGAN, ANDERSON, SAGER, KINT-ZINGER, MITCHELL, and PARSONS, JJ., concur.