William E. GRAHAM and Velda Irene
Graham, Appellees,

v.

Edwin R. HENRY and Ruth
Henry, Appellants.

No. 89–654.

Supreme Court of Iowa.

May 23, 1990.

Rehearing Denied June 20, 1990.

Stephen A. Hall of Hall & Schlenker, Indianola, for appellants.

Jeffrey G. Flagg, Des Moines, for appellees.

Considered by LARSON, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

This is a fight over farmland. The trial court set aside a lease between contract vendees and their parents and restored the land to the contract vendors. The court based its ruling on a finding that the lease was a sham perpetrated to avoid the effect of a pending contract forfeiture. On our de novo review we reach the same conclusion and affirm.

The facts are largely undisputed. In 1979, plaintiffs William and Velda Graham sold ninety-four acres of farmland on contract to Allen and Cindy Henry. The Henrys failed to make the installment payment due December 1, 1987, and the Grahams initiated forfeiture proceedings.

The Grahams subsequently learned that a contract for the sale of agricultural land may not be forfeited until the creditor engages in mediation and obtains a release from a mediator. *See* Iowa Code § 656.8 (making mediation a condition precedent to forfeiture); *see generally* Iowa Code ch.

654A (farm mediation). The Grahams' and Henrys' involvement in the mediation process is detailed in an earlier chapter of this saga, *Graham v. Baker*, 447 N.W.2d 397 (Iowa 1989) (hereinafter *Graham I*). For the purpose of the present opinion, it is important only to note that mediation took place on Friday, February 19, 1988, and that the Grahams and Henrys were led to believe that a mediation release would be forthcoming without delay so that the forfeiture could then proceed.

The day following the mediation session, the Henrys executed an agreement with their parents, defendants Edwin and Ruth Henry, to lease the ground that the Grahams were trying to forfeit. For many years the family had farmed the ground together without benefit of a legal document. This time they negotiated a reasonable rent and the "senior" Henrys issued the "junior" Henrys a check for $8400. On Monday, February 22 at 8:05 a.m., the Henrys recorded their lease at the Warren County Courthouse. No one told the Grahams.

Although everyone expected a mediation release in February, the release was not issued until August 29, 1988. *See generally Graham I*, 447 N.W.2d 397. Thereafter, the Grahams reinstituted forfeiture proceedings against vendees Allen and Cindy Henry. It was in connection with continuation of the abstract of title that the Grahams learned of the Henrys' lease. The default in the contract was not remedied within the statutory thirty days, *see* Iowa Code § 656.4, and the Henrys were divested of their interest in the property in early October 1988.

Meanwhile, defendants Edwin and Ruth Henry remained in possession of the land under their lease with their children. The deadline for termination of farm tenancies, September 1, came and went without action by the Grahams because they held no possessory interest in the property until the forfeiture was completed. The Henrys, therefore, asserted the right to retain possession of the land through the 1989 crop year and until March 1, 1990. Because the Grahams had received neither contract payments nor rent for the 1988 crop year, they commenced this equitable action in December 1988 to terminate the Henrys' lease. The case was tried to the court in January 1989.

The district court found that the farm tenancy created by the Henrys in February 1988 was "a sham perpetrated on the Grahams to prevent them from exercising their rights in regards to the property." The court characterized as a "canard" Edwin Henry's testimony that he leased the farm from his son to help his cash flow situation, and the court lamented that the delayed mediation release had merely facilitated the "hoax." In the court's view, the "real" purpose of the lease "was to disguise reality with paperwork." The court voided the lease, concluding that equity compelled the restoration of the farm to the Grahams. It is from this ruling that Henrys have appealed.

Henrys assert that the continuity of a farm tenancy is protected despite an intervening forfeiture of the vendee/lessor's interest if the contract vendor fails to give the notice of termination of farm tenancy by September 1. *See* Iowa Code §§ 562.6 and .7. Indeed, this court said as much in *Ganzer v. Pfab*, 360 N.W.2d 754, 756 (Iowa 1985), where we held that common-law tenancy rules must give way to the farm tenancy protections contained in sections 562.6 and .7. *Ganzer*, 360 N.W.2d at 756. Otherwise, the court observed, "a farm tenant could be expelled by the vendor from possession in mid-crop year without effective or equitable recourse." *Id.*

■ Even appellants concede, however, that reliance on *Ganzer* presumes the validity of the lease. Here the trial court invalidated the lease based on its finding that the document was an agreement without substance designed solely to place the property outside the lawful reach of a creditor. On an appeal from a judgment in equity, we are not bound by the trial court's findings. Iowa R.App.P. 14(f)(7) (appeal in equity reviewed de novo). The trial court's assessment of the credibility of the witnesses, however, carries considerable weight. *Id.*

The trial court's ruling rested on the doctrine of fraudulent conveyances. A fraudulent conveyance is generally defined as "a transaction by means of which the owner of real or personal property has sought to place the land or goods beyond the reach of his creditors, or which operates to the prejudice of their legal or equitable rights." 37 Am.Jur.2d *Fraudulent Conveyances* § 1 at 691 (1968 & 1988 Supp.). The doctrine advances the principle that a debtor's property constitutes a fund from which debts should be paid and that the debtor may not hinder a creditor's right to proceed against the fund. *Id.* A debtor who disposes of property with the intent to delay or defraud creditors exceeds legitimate authority and the transaction will be "deemed to be inequitable and subject to being set aside." *Id.; see also Beardsley v. Clark*, 229 Iowa 601, 607, 294 N.W. 887, 890 (1940) (equity will hold for naught any instrument that has its inception in fraud).

This court has applied the doctrine to leases as well as absolute conveyances of title. *See Webber v. King*, 205 Iowa 612, 617, 218 N.W. 282, 284 (1928) (applying doctrine to set aside lease executed by mortgagor with intent to deprive receiver of rents); *see generally* 37 Am.Jur.2d § 58, at 743 (neither nature nor form of transaction, but presence of fraud, makes conveyance fraudulent).

To determine whether a conveyance is fraudulent we look for certain badges or indicia of fraud such as inadequacy of consideration, insolvency of the transferor, and pendency or threat of third-party creditor litigation. *Rouse v. Rouse*, 174 N.W.2d 660, 667 (Iowa 1970); *Muehlenthaler v. DeBartolo*, 347 N.W.2d 688, 690 (Iowa App.1984); *see also First Nat'l Bank v. Frescoln Farms, Ltd.*, 430 N.W.2d 432, 435 (Iowa 1988) (transfer of property without consideration is presumed fraudulent and may be set aside unless transferee shows transferor remained solvent after transaction); *Regal Ins. Co. v. Summit Guar. Corp.*, 324 N.W.2d 697, 703 (Iowa 1982) (same). Although a "blood relationship is not per se a badge of fraud, it may

strengthen the inference arising from the circumstances, requiring strict proof of consideration and fairness of the transaction." *Rouse*, 174 N.W.2d at 667; *Frescoln Farms*, 430 N.W.2d at 435–36.

In addition to these recognized indicia of fraud, courts also examine transactions for secrecy or concealment, departure from the usual method of business, the reservation of benefit to the transferor, and the retention by the debtor of possession of the property. 37 Am.Jur.2d § 10, at 701–02. While a single badge of fraud may in some instances suffice to set aside a transaction, customarily a combination of circumstances is necessary to warrant ·an inference of fraud. *Id.* at 702. Proof of fraud must be established by clear and convincing evidence. *Webber*, 205 Iowa at 617, 218 N.W. at 284.

These hallmarks of fraud are readily apparent in the record before us. Although the adequacy of consideration for the lease is not strictly challenged, two factors cast a cloud on even this element of the transaction: the fact that the exchange of cash departed from the Henrys' usual business practice of farming together as a team without remuneration, and the fact that the payment was made from father to son. Both facts strongly suggest that the writing and cashing of the check were done to give the outward appearance of an arm's length transaction rather than to consummate one that truly was.

The insolvency of Allen and Cindy Henry may be inferred from circumstantial evidence if not direct proof. The record reveals that at the time the lease was executed, the Henrys' contract with the Grahams was over $15,000 in arrears, including unpaid real estate taxes for 1986 and 1987. Allen testified that he was compelled to lease the acreage "to someone" in order to generate capital for legal fees and rent due on other farm ground. In the words of Edwin Henry, "[Allen] had to have some money to operate. He couldn't do it." We infer from this evidence that Allen and Cindy Henry were insolvent, that is, the sum of their debts was greater than their accumulated assets at fair valuation.

*See Frescoln Farms,* 430 N.W.2d at 436 (adopting the Uniform Fraudulent Transfer Act definition of insolvency).

Most telling, however, is the timing of the lease in relation to the pending contract forfeiture. On February 20, all parties were operating on the belief that a mediation release would be forthcoming without delay and the forfeiture would be concluded thirty days thereafter. With planting season just around the corner, Henrys wasted no time in securing a farm tenancy that, under *Ganzer,* could arguably be protected even if the property were forfeited. The beauty of the Henrys' plan, from their point of view, was that no one but the Grahams would be inconvenienced. It was business as usual as far as the Henrys were concerned. Allen Henry made that clear when he described how he and his father and uncle worked together: "I work every bit of ground that's theirs and mine, the same with them, they work every bit of ground that's theirs and mine." Moreover, he acknowledged, in jointly farming the 700 acres that include the acreage in dispute, they used "the same machinery, the same rotation, the same everything."

It is this identity of operation between the lessor and the lessee that led the trial court to conclude that the lease between the Henrys was a mere pretense to avoid the effect of Grahams' imminent contract forfeiture. In essence, vendees Allen and Cindy Henry were attempting to use their parents as "straw" tenants in an effort to extend their possessory interest in the land beyond that afforded them as defaulting vendees under the forfeiture statute. Their scheme, though technically legal, must not be rewarded. As this court noted over fifty years ago when striking down a similar lease negotiated by a mortgagor to deprive a receiver of rents:

> Concededly appellants had a perfect right to enter into a valid lease at the time in question, but we are constrained to hold, under the facts revealed by this record, that good faith in the case at bar was lacking and that the contract of tenancy was a mere pretense and, in fact, had no validity, for it was created with the intent to deceive, defraud, and cover

up so that the receiver could not obtain possession of the 'rents, issues, profits, and income.'

*Webber v. King,* 205 Iowa at 617–18, 218 N.W. at 284.

In summary, we are in agreement with the factual findings made by the trial court and the legal conclusions applied to redress the inequity revealed by those findings. The trial court properly invalidated the Henrys' lease and restored rightful possession of the ground to the Grahams. We affirm.

AFFIRMED.