PRODUCTION CREDIT ASSOCIATION OF the MIDLANDS, f/k/a/ Clarinda Production Credit Association, Appellee,

v.

Bobby T. SHIRLEY, a/k/a Bob Shirley and Patricia Shirley, Appellants,

and

Taylor Enterprises, Inc., Lyle K. Taylor, and Georgia M. Taylor, Defendants.

No. 90–253.

Supreme Court of Iowa.

May 13, 1992.

470

Vicki R. Danley, Sidney, for appellants.

Jerrold L. Strasheim and Timothy V. Haight of Baird, Holm, McEachen, Pedersen, Hamann and Strasheim, Omaha, Neb., for appellee.

Considered by McGIVERIN, C.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Defendants Bob and Patricia Shirley appeal from a district court determination that they purchased certain corporate stock with actual intent to defraud plaintiff Production Credit Association of the Midlands. We affirm.

I. *Background facts and proceedings.* For many years prior to the present litigation, Lyle and Georgia Taylor conducted extensive farming and rental operations through their corporation, Taylor Enterprises, Inc. (TEI). Since late 1983, these operations have been financed by Citizens State Bank (Citizens) and plaintiff Production Credit Association of the Midlands (PCA).

Some time after 1983, TEI became unable to make payments on its several loans from Citizens and PCA. As a result, Citizens, TEI, and PCA commenced various foreclosure and damage actions against one another. Citizens eventually obtained a judgment against Taylors and TEI of over $1.0 million, and PCA obtained a judgment against the Taylors and TEI of over $1.7 million. PCA also prevailed in a damages action which Taylors had brought against PCA. *See Taylor Enter. Inc. v. Clarinda Prod. Credit Ass'n,* 447 N.W.2d 113 (Iowa 1989). Finally, Citizens and PCA settled certain claims of Citizens by entering into an agreement whereby PCA subordinated to Citizens its interests in various assets of the Taylors and TEI.

PCA obtained its $1.7 million judgment against the Taylors and TEI in September 1987. Roughly three months later, in December 1987, PCA commenced mandatory mediation proceedings with the Iowa Farmer–Creditor Mediation Service in an effort to settle the Taylors' monetary problems with PCA. *See* Iowa Code § 654A.6 (1987). Section 654A.6 stays a creditor such as PCA from initiating any proceedings to enforce its claims against agricultural property until the creditor obtains a mediation release. *See* Iowa Code § 654A.11. PCA received its mediation release on January 26, 1988.

In December 1987, during the period of time that PCA and the Taylors were engaged in settlement negotiations, Lyle indicated he could sell for the benefit of PCA the shares of Lyco, Inc., an Iowa corporation formed and operated by Lyle. During this time, however, without prior knowledge by PCA, Lyle sold to his nephew and his wife, defendants Bob and Patricia Shirley, all of the shares of Lyco for $90,000. Lyco consisted of two vacation homes in Arizona and Minnesota as well as some other items of personal property. Lyle apparently used the money he received from the sale to pay off a portion of Citizens' $1.02 million judgment. During the same period of time as the sale of Lyco, the Shirleys agreed to lease back to the Taylors Lyco's two vacation homes.

PCA thereafter commenced this equity action against Taylors, the Shirleys, and TEI to set aside the Lyco share transfer, contending that the transfer of the Lyco shares was made with intent to hinder, delay, or defraud PCA as a creditor of the Taylors and TEI. After trial, the district court found that the transfer of the shares was in fact fraudulent as to PCA and ordered the Shirleys to, among other things, transfer the shares and all rents from Lyco's vacation homes to PCA.

Following several adverse posttrial orders, Shirleys appealed. We transferred the case to the court of appeals, which thereafter affirmed the district court's ruling. *See* Iowa R.App.P. 401(a). We granted Shirleys' application for further review, and now affirm the decision of the court of appeals and the judgment of the district court. *See* Iowa R.App.P. 402.

In this equity action, our review is de novo. *See* Iowa R.App.P. 4. Although we give weight to the fact findings of the district court, especially when considering the credibility of witnesses, we are not bound by them. *See* Iowa R.App.P. 14(f)(7).

II. *Evidence of fraudulent intent.* On this appeal, the Shirleys contend that there is insufficient evidence to support the dis-

trict court's finding that Bob and Patricia Shirley purchased the Lyco shares from the Taylors in order to participate in a scheme by Taylors to hinder, delay, or defraud PCA. Shirleys contend that Lyle Taylor properly transferred the shares to the Shirleys, using the proceeds thereof to reduce Citizens' $1.02 million judgment. We disagree.

■ A. The general rule is that, in the absence of statutory regulation, debtors such as Taylors and TEI may lawfully prefer one or more of their creditors to others in applying their assets to the discharge or securing of their obligations. *See Rouse v. Rouse,* 174 N.W.2d 660, 668 (Iowa 1970) (creditor may take security for debt due, even though he is aware that the purpose of the debtor is to hinder or defeat other creditors); *Central Shoe Co. v. Rashid,* 203 Iowa 1103, 1106, 212 N.W. 559, 561 (1927); 37 Am.Jur.2d *Fraudulent Conveyances* §§ 87, 89, at 770, 772 (1968); 37 C.J.S. *Fraudulent Conveyances* § 235, 245, at 1058, 1076–77 (1943). It is generally immaterial that other creditors such as PCA may by the preference be delayed or wholly prevented from obtaining payment, since this is the natural result of the preferential transfer. *See* 37 Am.Jur.2d *Fraudulent Conveyances* §§ 87, 89, at 771–72 (1968).

■ Furthermore, a debtor's intent to hinder, delay, or defraud other creditors does not alone invalidate a preferential transfer. *See Monona County v. Schoenherr,* 251 Iowa 1301, 1306, 105 N.W.2d 91, 94 (1960); 37 Am.Jur.2d *Fraudulent Conveyances* §§ 87, 89, at 771–72 (1968). However, transferees such as Shirleys may not lawfully take a conveyance in order to further the plans of the debtor to hinder, delay, or defraud other creditors; the acceptance of a conveyance under such circumstances amounts to a participation in the debtor's fraud. *See Rouse,* 174 N.W.2d at 668; *Hatheway v. Hanson,* 230 Iowa 386, 394, 297 N.W. 824, 827 (1941); *First Nat'l Bank v. Currier,* 218 Iowa 1041, 1044–45, 256 N.W. 734, 736 (1934); *Central Shoe,* 203 Iowa at 1106, 212 N.W. at 561; 37 Am.Jur.2d *Fraudulent Conveyances*

§ 89, at 773 (1968). Thus, in order for a non-preferred creditor such as PCA to invalidate a transfer such as that from Taylors to Shirleys, the creditor has the burden of showing by clear and convincing evidence the transferee's intentional participation therein. *See Rouse,* 174 N.W.2d at 668; *Monona County,* 251 Iowa at 1306, 105 N.W.2d at 94; *Terre Haute Brewing Co. v. Linder,* 233 Iowa 359, 366, 7 N.W.2d 16, 20 (1943); *Pike v. Coon,* 217 Iowa 1068, 1071, 252 N.W. 888, 890 (1934).

■ B. As a general rule, an intentionally fraudulent conveyance is any "transaction by means of which the owner of real or personal property has sought to place the land or goods beyond the reach of his creditors, or which operates to the prejudice of their legal or equitable rights." *Graham v. Henry,* 456 N.W.2d 364, 366 (Iowa 1990). However, because fraud is not committed openly, direct evidence of it is rarely obtainable; fraud may, and usually must be proved by circumstantial evidence. *Rouse,* 174 N.W.2d at 667. Thus, to determine whether a conveyance is fraudulent, we look for certain badges or indicia of fraud such as inadequacy of consideration, insolvency of the transferor, and pendency or threat of third-party creditor litigation. *Graham,* 456 N.W.2d at 366; *Rouse,* 174 N.W.2d at 667–68.

■ We must also examine the transaction for secrecy or concealment, departure from the usual method of business, any reservation of benefit to the transferor, and the retention by the debtor of possession of the property. *Graham,* 456 N.W.2d at 366. Whereas the circumstances of a bona-fide transaction are ordinarily consistent with each other, a fraudulent transaction "naturally begets stilted, contradictory, and incredible evidence." *Rouse,* 174 N.W.2d at 667. And although a "blood relationship" is not per se a badge of fraud, it may strengthen the inference arising from the circumstances, requiring strict proof of consideration and fairness of the transaction. *Graham,* 456 N.W.2d at 366; *Rouse,* 174 N.W.2d at 667. All of the circumstances of any given transaction must ordinarily be considered together.

*Rouse*, 174 N.W.2d at 667. Thus, each case of this character must be decided upon facts peculiar to it alone. *Id.* at 667. Furthermore, fraud is not presumed and must be established by clear and convincing evidence. *Graham*, 456 N.W.2d at 366; *Rouse*, 174 N.W.2d at 667.

■ Based upon our de novo review of the record, we conclude that PCA has demonstrated by clear and convincing evidence that the Shirleys intentionally participated in a scheme by Taylors to defraud plaintiff PCA.

1. *General business background.* As stated above, defendant Bob Shirley is Lyle Taylor's nephew. For many years, they have had extensive business dealings with one another. Bob owned and operated Shirley Ag Service, Inc., a fertilizer and trucking business which conducted tens of thousands of dollars in business each year with Lyle and TEI. Bob was also the manager, treasurer, and a stockholder of Percival Grain, Inc., which customarily bought large portions of Lyle and TEI's grain crop. In addition, Bob was engaged in a farming business through BTR Farms Partnership. Bob and BTR over the years had been major tenants of Lyle and TEI, renting up to 1500 acres of farm land from TEI.

Bob was also aware of Lyle and TEI's financial problems with Citizens and PCA. At trial, Bob admitted that he knew Lyle was having financial difficulties with PCA; he on a previous occasion caused Shirley Ag Service to send a notice to PCA designed to ensure payment for seed and fertilizer that Lyle and TEI purchased on credit from Shirley Ag Service. Furthermore, shortly before Bob purchased the Lyco shares, he received from PCA a notice of the pending mediation proceedings along with a copy of PCA's foreclosure decree against Lyle and TEI. This decree outlined in great detail extensive findings of Lyle's previous pattern of behavior, much of which indicated an intent to defeat and defraud PCA. Lyle testified at trial that he and Bob "talk about everything," and Bob testified that he did not like how PCA conducted its business, feeling that PCA was somehow prejudiced against him.

2. *Nature of the transaction.* As stated above, PCA obtained a $1.7 million judgment against the Taylors and TEI in September 1987. Although Lyle represented to PCA in a settlement offer during pending mediation proceedings under Iowa Code section 654A.6 that the Lyco shares could be sold to help satisfy PCA's judgment, Lyle nevertheless sold the shares to Bob without any prior notice thereof to PCA. Lyle sold the shares without ascertaining their value and without advertising any sale or listing Lyco's assets with brokers, even though he had previously used a broker to sell another of Lyco's homes because he knew "that was the way to sell the place." Bob[1] agreed to purchase the shares despite having received from PCA a copy of PCA's foreclosure decree detailing Lyle's previous pattern of behavior.

There are other indications that the actual sale of Lyco's shares was not an armslength transaction. Although Bob agreed to purchase the Lyco shares from Lyle for only $90,000, the evidence presented at trial indicated that the fair market value of Lyco's assets was at least $180,000. However, prior to purchasing Lyco, Bob did not ask to see any existing financial statements of Lyco, was aware of no appraisal of Lyco's assets, did not inquire of any real estate broker as to the actual value of Lyco's two vacation homes despite having sold previously-owned Arizona homes through brokers, and did not even know the square footage of either of the homes. He did not know at the time of his purchase that an account receivable was owing to Lyco from Lyle, that Lyco had roughly $5000 in a bank account, or that certain of the properties had been insured by Lyle's pre-payment of insurance premiums.

Furthermore, Bob never received any documents disclosing what he was buying or memorializing the sale, never attended a closing, did not ascertain whether Lyco had good title to either of the homes, and failed to procure any title insurance. He did not

---

1. Because Bob's wife Patricia relied on Bob to act on her behalf, Patricia is bound by his decisions and actions. *See Dillon v. City of Davenport*, 366 N.W.2d 918, 924 (Iowa 1985).

personally inspect either of the premises prior to purchasing the stock, and he never determined what furniture was contained in each home or what it was worth. And at roughly the same time as the sale of Lyco, Bob and Patricia orally agreed to lease Lyco's vacation homes back to the Taylors, desiring not to lease the property to anyone else, nor even inquiring as to how much rent they could get by renting the assets to someone else. Although the parties did not specify a term for the lease, Lyle prepaid six months rent from TEI funds at the time of the sale, the amount roughly equal to the Shirleys' interest payments on the $90,000 they borrowed to purchase Lyco. Lyle and his wife Georgia spent the same amount of time in Lyco's vacation homes after the sale of the shares as before their sale. For several months before trial, they continued to occupy the homes without paying any rent.

C. We conclude, as did the district court and the court of appeals, that the foregoing facts establish by clear and convincing evidence that Lyle sold the Lyco shares with actual intent to defeat and defraud PCA. We also believe that these facts establish that the Shirleys intentionally participated in Lyle's fraudulent scheme. Accordingly, we find no error as to this assignment.

III. *Bona fide purchaser status.* The Shirleys alternatively contend that they were bona fide purchasers of the Lyco stock and that PCA is not entitled to recover the stock from them. *See* Iowa Code §§ 554.8302, 554.8315(1); *see also Regal Ins. Co. v. Summit Guar. Corp.*, 324 N.W.2d 697, 703–04 (Iowa 1982). A "bona fide purchaser" is "a purchaser for value in good faith and without notice of any adverse claim...." *See* Iowa Code § 554.-8302. We believe that the facts detailed above clearly show that the Shirleys were not bona fide purchasers; at the least, they did not purchase the stock "in good faith" because of their participation in Lyle's fraudulent scheme. *See* Iowa Code § 554.-1201(19) (good faith means "honesty in fact in the conduct or transaction concerned").

IV. *Remedy.* Shirleys argue that the district court erred in ordering them to transfer Lyco's shares and all rents received to PCA. They contend that PCA has not demonstrated that it was prejudiced by Lyle's sale of the shares, and they imply that they are at least entitled to credit for the $90,000 they paid to purchase the stock. We disagree.

A. No party contends that PCA would have been precluded from levying on the stock. As outlined in the previous divisions, PCA has demonstrated by clear and convincing evidence that the Shirleys intentionally participated in Lyle's fraudulent scheme to defraud PCA. However, for a conveyance to be set aside as a fraud on creditors, it is necessary for PCA to show prejudice, even where there has been actual fraudulent intent. *C. Mac Chambers Co., Inc. v. Iowa Tae Kwon Do Academy, Inc.*, 412 N.W.2d 593, 596 (Iowa 1987). We have interpreted prejudice or injury to mean that the defrauded creditor must be able to show it would have received something which has become lost by reason of the conveyance. *Id.* On this appeal, Shirleys contend that PCA has not demonstrated that it would have received something which became lost by reason of Lyle's transfer of the Lyco shares. We disagree.

The record establishes that the consideration paid by Shirleys for the Lyco stock, $90,000, was roughly half the actual value of Lyco's assets. This lowered consideration, which was paid to Citizens by Taylors, effectively prevented PCA from bidding at a sheriff's judicial sale of several hundred acres of TEI farm land and other property in which Citizens had a prior security interest.

Citizens purchased this farm land and property at the sale, having credit bid an amount sufficient to liquidate its outstanding judgment. Evidence presented at trial indicated that had Citizens received the actual value of the Lyco shares, in all likelihood Citizens, which, based upon estimated market values of the property, was oversecured, would have in turn credit bid between $90,000 to $100,000 less at the judicial sale. Based upon the actual market value of this farm land and other property,

it then would have been more feasible economically for PCA to have outbid Citizens to protect its much larger judgment. In this manner, the inadequate consideration paid by Shirleys for the Lyco shares cost PCA at least the full value of Lyco's assets. The trial court and court of appeals so concluded and we agree.

In sum, we conclude that prejudice may be shown where a debtor such as Lyle or TEI transfers property for inadequate consideration to a collusive third person and pays the sale proceeds to an oversecured creditor such as Citizens, with intent to defraud an unsecured creditor such as PCA. Accordingly, it was proper for the court to order Shirleys to transfer the stock certificates and rents to PCA.

■■■ B. As stated above, Shirleys imply that they are at least entitled to credit for the $90,000 they paid to purchase the Lyco stock. However, when a debtor such as Lyle or TEI transfers property with actual intent to hinder, delay, or defraud his creditors, and transferees such as Bob and Patricia Shirley knowingly participate in the debtor's fraud, the transferees' rights are inferior to those of the debtor's creditors and, on the setting aside of the conveyance, the transferees are not entitled to any reimbursement or other protection to the extent of the consideration paid for the property. *See Grimes Sav. Bank v. McHarg,* 224 Iowa 644, 652–55, 276 N.W. 781, 786–88 (1938); *Leach v. Edgerton,* 203 Iowa 512, 518, 211 N.W. 538, 540 (1926); *Chapman v. Ransom,* 44 Iowa 377, 379 (1876); 37 Am.Jur.2d *Fraudulent Conveyances* § 120, at 800 (1968); 37 C.J.S. *Fraudulent Conveyances* § 280, at 1117–18 (1943); Annotation, 79 A.L.R. 132, 133 (1932). *Cf. Malcom Sav. Bank v. Mehlin,* 200 Iowa 970, 973, 205 N.W. 788, 789 (1925). To refund to the transferee the amount paid would be to remove all danger of loss and destroy the restraint which the law imposes upon such transactions. Thus, until creditors such as Citizens and PCA are paid in full, transferees such as the Shirleys are not entitled to reimbursement for any consideration paid.

■■ V. *Deprivation of due process.* Finally, Shirleys argue that they were deprived of an impartial tribunal and due process of law because the district court judge, in an ex parte communication, directed counsel for PCA to prepare the court's decree. Shirleys contend that they are entitled to a new trial. *See* Iowa R.Civ.P. 244(a). Shirleys also contend that the district court erred in quashing their subpoena duces tecum served on PCA's counsel insofar as this prevented Shirleys from obtaining information about counsel's preparation of the decree. *See* Iowa R.Civ.P. 166.

We have previously emphasized that if a court, because of prevailing custom, pressure of work, or a case's technical nature, requests counsel to assist in the preparation of findings and conclusions, in fairness all parties should be given the same opportunity to submit proposed findings and to comment on findings proposed by others. *Kroblin v. RDR Motels, Inc.,* 347 N.W.2d 430, 435–36 (Iowa 1984). However, based on the particular circumstances of this case, we conclude that Shirleys have failed to establish that their substantial rights were affected by the district court's reliance on PCA's counsel in drafting the court's final decree. *See* Iowa R.Civ.P. 244. To adapt our statements in *Kroblin* to this case:

> [The Shirleys do] not in this appeal contend that any particular finding of fact or conclusion of law proposed by [PCA's] counsel and adopted by the court was unsupported by the evidence or incorrect except to the extent already considered and affirmed. Consequently, even though we disapprove the trial court's ex parte request for proposed rulings, we find that the [Shirleys have] not been harmed by being deprived of [their] right to submit [their] own proposed rulings and comment on those suggested by [PCA's] counsel.

347 N.W.2d at 436. Accordingly, we find no reversible error as to these assignments.

VI. *Disposition.* In sum, we conclude that there is clear and convincing evidence

that Shirleys intentionally participated in a fraudulent scheme by Lyle Taylor to defraud PCA. We also conclude that, as a result, Shirleys may not claim the status of bona fide purchasers. Furthermore, we conclude that PCA has demonstrated prejudice as a result of the sale of the Lyco stock, and that Shirleys are not entitled to credit for the consideration they paid. Finally, we conclude that Shirleys were not deprived of an impartial tribunal or due process of law.

We have considered the parties' other contentions and find them without merit or unnecessary to discuss. Accordingly, we affirm the decision of the court of appeals and the judgment of the district court.

DECISION OF COURT APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.