**GENERIC FARMS, An Iowa Partnership, and Generic Seeds, Inc., An Iowa Corporation, Plaintiffs–Appellees,**

v.

**James R. STENSLAND, Five S Farms, Inc., and Circle Seed, Inc., Defendants,**

**Brian Knecht, d/b/a Custom Services, Defendant–Appellant.**

No. 92–1615.

Court of Appeals of Iowa.

April 26, 1994.

John J. Hines of Dutton, Braun, Staack, Hellman & Iverson, Waterloo, for appellant.

James P. Craig and Marsha M. Beckelman of Moyer & Bergman, Cedar Rapids, for appellees.

Heard by HAYDEN, P.J., SACKETT, J., and PETERSON,* Senior Judge.

HAYDEN, Presiding Judge.

In 1985 Brian Knecht and James Stensland formed a seed corn company, J & B Custom Services. Knecht was the sole proprietor of Custom Services. Stensland, who had lost his family's seed corn business in the farm crisis of the early 1980s, worked for Custom Services in order to maintain contacts in the industry. Stensland worked at Custom Services without pay as a representative for the company, obtaining contracts with various other companies for the sale and production of seed corn.

Knecht, pursuant to contracts between Custom Services and Land O'Lakes, had produced seed corn for Land O'Lakes/Cenex since 1987. These contracts had been obtained by Stensland and signed by Knecht.

In early 1991 Stensland entered into a trademark assignment in which he transferred his entire interest in the Circle Seed Hybrids II trademark to Land O'Lakes/Cenex. In return, Land O'Lakes agreed to purchase 125 acres of hybrid seed corn for each of the 1991 and 1992 seed production years. Knecht later agreed to produce and deliver to Land O'Lakes the 125 acres of 1991 seed corn, which was the subject of the agreement between Stensland and Land

* Senior judge from the 1st judicial district serving on this court by order of the Iowa Supreme Court.

O'Lakes. Knecht produced and delivered this crop at a cost of $80,160. At the time Knecht entered into this contract with Land O'Lakes for the 125 acres of 1991 seed corn he was aware of the pending litigation against him, Stensland, and other defendants. Generic Farm and Generic Seeds (Generic) had commenced a breach of contract action against them. Then in September 1991, following a lengthy trial, the district court awarded Generic a $114,313.83 judgment against Stensland and Circle Seed for a breach of contract. The judgment was not against Knecht. A portion of the judgment was satisfied with funds held in escrow. Stensland, however, still owed Generic Farms $70,053.63 plus interest.

On January 10, 1992, Generic learned Land O'Lakes might be indebted to Stensland. Generic had learned Knecht had obtained two years of seed corn production contracts with Land O'Lakes through Stensland as a result of the assignment of the trademark of Circle Seeds. Generic subsequently filed a garnishment on Land O'Lakes to enforce payment of the remaining seventy-thousand-dollar judgment. Land O'Lakes answered interrogatories regarding the garnishment, stating it had a contract with Custom Services and Stensland may be the owner.

Generic soon discovered Knecht had already received the first installment payment from Land O'Lakes in the amount of $49,218 and was to receive another $41,366. Generic requested a hearing to examine Land O'Lakes and filed a motion to stay payment due on the contract between Knecht and Land O'Lakes. The district court granted the motion to stay payment.

On April 3, 1992, Knecht filed a petition to intervene, claiming all of the funds due under the Land O'Lakes contract. Knecht argued Land O'Lakes was not indebted to Stensland, and Stensland had no right or claim to the proceeds from the 1991 production contract. The district court ordered the remaining $41,366 due under the contract between Land O'Lakes and Custom Services be paid to the clerk of court pending an evidentiary hearing.

Following a trial in September 1992 the district court concluded Stensland, while insolvent, had transferred without adequate consideration the seed corn production contracts he received for the sale and assignment of the Circle Seed trademark. The district court ruled the transfer was fraudulent and set it aside. The court ordered the clerk of court to apply the $41,366 to Generic's judgment against Stensland. Knecht has appealed.

Knecht argues Generic did not prove by clear and convincing evidence Stensland engaged in a fraudulent conveyance. Knecht maintains the district court erred in concluding Stensland requested the seed corn contracts in lieu of cash in order to keep his creditors from pursuing a garnishment. Knecht contends Stensland received adequate consideration for his assignment of the trademark and the production contracts. Knecht additionally argues Generic cannot use a garnishment proceeding to defeat his existing contractual and equitable right to the $41,366 from the 1991 production contract.

■ Our review of this equity proceeding is de novo. Iowa R.App.P. 4; *Graham v. Henry*, 456 N.W.2d 364, 365 (Iowa 1990).

■ The trial court determined the assignment of the Land O'Lakes seed corn contracts by Stensland to Knecht as a result of the trademark assignment was a fraudulent conveyance. Our supreme court has defined fraudulent conveyance as "a transaction by means of which the owner of real or personal property has sought to place the land or goods beyond the reach of his creditors, or which operates to the prejudice of their legal or equitable rights." *Graham*, 456 N.W.2d at 366 (citing 37 Am.Jur.2d *Fraudulent Conveyances* § 1 (1968)). To determine whether a conveyance is fraudulent we look for certain badges or indicia of fraud such as inadequacy of consideration, insolvency of the transferor, and pendency or threat of third-party creditor litigation. *Production Credit Ass'n v. Shirley*, 485 N.W.2d 469, 472 (Iowa 1992) (citations omitted). We also examine the transaction for secrecy or concealment, departure from the usual method of business, any reservation of benefit to

the transferor, and the retention by the debtor of possession of the property. *Id.* (citing *Graham,* 456 N.W.2d at 366). All of the circumstances of any given transaction must ordinarily be considered together. *Production Credit Ass'n,* 485 N.W.2d at 472–73 (citation omitted).

■ Generic bears the burden of proving a fraudulent conveyance by clear and convincing evidence. *Graham,* 456 N.W.2d at 366. Generic must also show it was prejudiced. *Production Credit Ass'n,* 485 N.W.2d at 475 (citation omitted).

■ Generic contends Stensland's transfer of the Land O'Lakes seed corn contracts to Knecht constituted a fraudulent conveyance which must be set aside. We agree and affirm the district court's finding of a fraudulent conveyance. There are several badges or indicia of fraud surrounding the conveyance of the two contracts which support a finding of fraud.

Stensland entered into an agreement with Land O'Lakes in which he transferred his rights in the Circle Seeds Hybrids II trademark to Land O'Lakes. In consideration of the trademark rights, Land O'Lakes agreed to purchase from Stensland 125 or more acres worth of hybrid seed corn for each of the 1991 and 1992 seed production years. Stensland testified Land O'Lakes had offered to purchase his rights in the Circle Seeds trademark. He, however, refused the offer to purchase. Stensland specifically requested seed corn contracts in lieu of cash for the Circle Seeds trademark.

Stensland assigned the two seed corn contracts to Knecht. On March 28, 1991, Knecht signed the contracts on behalf of Custom Services. At the time of the transfer Stensland and Knecht were defendants in litigation in which Generic sought money owed for an alleged breach of contract. The nonjury trial was held in early April of 1991, and the matter was submitted to the district court on June 3, 1991. This third-party creditor litigation which was pending against these parties at the time of the assignment of the contracts is a badge of fraud. *Production Credit Ass'n,* 485 N.W.2d at 472 (citation omitted).

Evidence shows Stensland was insolvent at all times surrounding the transaction and remains insolvent. Insolvency of the transferor is another badge of fraud. *Id.* (citation omitted).

Knecht testified neither he nor Custom Services paid Stensland for his work as a representative for Custom Services. He admitted he paid nothing to Stensland for the rights to the Land O'Lakes seed corn contracts. Stensland received inadequate consideration from Knecht for the transfer of the seed corn contracts even though Stensland exchanged his rights to the Circle Seeds trademark to obtain the contracts. Inadequacy of consideration is another badge of fraud which may warrant the setting aside of a conveyance. *Id.*

■ In viewing all of the circumstances and indicia of fraud surrounding the transaction, we determine Stensland's assignment of the seed corn contracts to Knecht was a fraudulent conveyance. We also conclude Generic was prejudiced by Stensland's assignment of the contracts. Our supreme court has interpreted prejudice to mean the defrauded creditor must be able to show it would have received something which has become lost by reason of the conveyance. *Id.* at 474. Generic was awarded a judgment against Stensland. When Generic sought to garnish Land O'Lakes regarding monies it owed to Knecht on the seed corn contracts, the outstanding balance of Generic's judgment equaled $70,053.73 plus interest. Generic sought to garnish the remaining $41,366 Land O'Lakes owed to Knecht. Prejudice may be shown where a debtor transfers property for inadequate consideration to a collusive third person. *See id.* at 475. We set aside the transfer of the contracts.

The trial court properly determined Generic was entitled to subject the second installment payment still held by Land O'Lakes to the seventy-thousand-dollar judgment against Stensland.

Costs of this appeal are assessed to appellant.

**AFFIRMED.**

PETERSON, S.J., concurs.

SACKETT, J., dissents.

SACKETT, Judge (dissenting).

Brian Knecht has argued that, even if there was a fraudulent conveyance, plaintiff was not prejudiced and to allow the trial court's judgment to stand would unjustly enrich the plaintiff. The majority has summarily dismissed this argument. I find these issues dispositive of resolving the appeal in Knecht's behalf and dissent.

Stensland found someone to produce the seed corn with the understanding that Stensland would share in the profits. Stensland assigned the contract to Knecht in what the majority finds to be a fraudulent transfer. Had Stensland not assigned the production contracts to Knecht, there would have been no potential for earnings from the contracts because Stensland was not able to grow the corn himself. If the production contracts were profitable, Stensland could have shared in the profits.

In signing the production contract with Cenex, Knecht agreed to produce and deliver 125 acres of seed corn of a particular type during the 1991 crop year. Knecht advanced all the money, labor and materials in the amount of $80,000 to produce the crop and was entitled to receive the market price for each bushel of seed corn produced pursuant to the contract. That is, Knecht was to receive $90,584 for crops costing him $80,000 to produce. Knecht would lose his investment if the yield did not cover the cost of production. So he also assumed a risk. Knecht received a first payment of $49,218. This did not pay his expenses. He was still $31,000 short of recouping his out-of-pocket expenses incurred in filling his duties under the contract. The majority decision allows Generic to be unjustly enriched at the expense of Knecht. Knecht loses $31,000 in out-of-pocket expenses, and he receives *no* compensation for the risk he assumed.

Even if the conveyance was fraudulent, plaintiff would be prejudiced at the most

$10,584, that is what the contract generated over the cost of production.