TEXTRON FINANCIAL CORPORATION,
Plaintiff–Appellant,

v.

Seth KRUGER, Jerome O. Olson and,
Ione J. Olson, Defendants–
Appellees.

No. 94–2132.

Court of Appeals of Iowa.

Feb. 2, 1996.

Daniel E. DeKoter of Corcoran, Skiver, Zito, DeKoter & Thole, P.L.C., Sibley for appellant.

James L. Kramer of Johnson, Erb, Bice & Carlson, P.C., Fort Dodge, for appellees.

Heard by HAYDEN, P.J., and CADY, and HUITINK, JJ.

CADY, Judge.

Textron Financial Corporation appeals a district court's order holding Jerome and Ione Olson did not receive title to certain farmland through fraudulent conveyance. We reverse and remand to the district court.

Seth Kruger owned a piano business in Willmar, Minnesota called Kruger Keyboard Centers, Inc. Textron Financial Corporation provided the floor plan financing for the business and financed part of Kruger's inventory. Jerome Olson, a close business associate of Kruger, also provided financing to Kruger and placed pianos for sale on consignment with the company.

The consignment agreement allowed Olson to borrow money from the bank and purchase pianos to be placed in Kruger's store. When a piano was sold, Kruger was to pay those proceeds to the bank in payment of the loans. However, Kruger began having financial difficulty and did not pay the proceeds to the bank. Olson soon became aware the proceeds were not forwarded to the bank. He obtained from Kruger and his store a $100,000 promissory note and continued to place pianos with him on consignment.

Kruger, facing financial problems, offered equity in his home to Textron if it would refinance his contract. Textron refused but Olson agreed, and borrowed money to refinance the home by paying off the bank and entering into a new contract with Kruger.

Kruger ultimately closed his business in April 1991. Olson was required to pay off his notes to the bank. Unfortunately, Kruger owed him over $117,000.

Olson later began selling pianos on consignment in a store in which Kruger was a salesman. In November 1991, Textron sought a default judgment in the Minnesota state courts against Kruger for $116,380.56.

The judgment was entered on December 27, 1991. On December 11, 1991, Kruger signed a quit claim deed transferring his interest in 62.5 acres of farmland located in Osceola County, Iowa to Olson in return for a credit against his debt with Olson. Kruger held a remainder interest in the land, with a life estate to his mother. Kruger signed over the property to Olson in exchange for a $35,000 credit against Kruger's debt to Olson. Olson did not record the deed until February 3, 1992. Olson had been requesting Kruger to deed the land to him for several months, but Kruger wanted a credit of $75,000. The Minnesota judgment against Kruger was transcripted to the Osceola County Clerk of Court on January 23, 1992.

Kruger's mother died in May 1992. Olson then became the owner of the farmland according to the quit claim deed.

Textron subsequently filed suit against Kruger, Olson and his wife, claiming it possessed a superior judgment lien to Olson's title by deed and the land should be sold. Olson counterclaimed, alleging his deed preceded Textron's judgment and gave him the status of a purchaser for value.

Prior to trial, Kruger declared bankruptcy and discharged his debts to Olson and Textron. At trial, Textron, using IRS guidelines, introduced evidence the value of the property was between $55,000 and $117,000. It also introduced medical testimony Kruger's mother was in very poor health at the time of the deed, thus raising the value of the remainder interest. It also introduced evidence concerning the circumstances surrounding the transfer of Kruger's future interest in the farm. Kruger testified he believed his mother was in relatively good health and stated no doctor had told him otherwise. Textron argued Kruger's conveyance was based on an attempt to avoid his creditors.

The district court concluded the $35,000 paid by Olson as a credit against Kruger's debt was not inadequate consideration, given the wide disparity of testimony regarding value of the land. The court further ruled even if Kruger and Olson acted with fraudulent intent by transferring title, Textron

failed to show prejudice because of the transfer, as Textron's highest value of the property would have only satisfied the debt to Olson and left nothing for Textron.

Textron appeals contending Kruger conveyed the property with the intent to defraud his creditors only days after Textron filed for a default judgment. It contends the $35,000 value was inadequate compensation, Olson never investigated the property prior to possession, and Olson was aware the conveyance was fraudulent. It claims Olson allegedly told a realtor he realized the farm had been in the Kruger family for many years and hated to see the family lose it. Textron also claims it was prejudiced by the conveyance since it was about to obtain a judgment lien against the property.

## I. Standard of Review

This is an equity action and our review is de novo. *See* Iowa R.App.P. 4. We give weight to the fact findings of the district court, especially when considering the credibility of witnesses, but are not bound by them. *See* Iowa R.App.P. 14(f)(7).

## II. Fraudulent Conveyance

 Debtors may generally prefer one creditor over another creditor in applying their assets to discharge or secure their obligations. *Production Credit Ass'n v. Shirley*, 485 N.W.2d 469, 472 (Iowa 1992). It is ordinarily immaterial the preference given by the debtor may delay or prevent other creditors from obtaining payment. *Id.* This is a natural consequence of preferential transfers. *Id.* Furthermore, a debtor's intent to defraud other creditors does not alone invalidate a preferential transfer. *Id.* The transfer may be invalidated, however, when the preferred creditor intentionally participates in the debtor's fraud. *Id.* The law does not permit the recipient of a preferential transfer to further the plans of the debtor to defraud other creditors by participating in the scheme. *Id.*

 As a general rule, a fraudulent conveyance occurs when the owner of real or personal property seeks to place land or goods beyond the reach of creditors, or when a transaction operates to prejudice the legal or equitable rights of the creditors. *Graham v. Henry*, 456 N.W.2d 364, 366 (Iowa 1990). The doctrine is built upon the principle that a debtor's property constitutes a fund from which debts should be paid and the debtor may not hinder a creditor's right to proceed against the fund. *Id.* A debtor who disposes of property with the intent to defraud creditors exceeds legitimate authority. *Id.* The transaction will be set aside as inequitable. *Id.*

 We readily recognize fraud is not committed openly, and direct evidence of it is rarely found. *Production Credit Ass'n*, 485 N.W.2d at 472. Consequently, fraud may be, and usually is, established by circumstantial evidence. *Id.* We look for certain badges or indicia of fraud such as inadequacy of consideration, insolvency of the transferor, and pendency or threat of third-party creditor litigation. *Id.*

 We also examine the disputed transition for such circumstances as secrecy or concealment, departure from the usual method of business, any reservation of benefit to the transferor, and the retention by the debtor of possession of the property. *Production Credit Ass'n*, 485 N.W.2d at 472. We also compare the transaction with the usual circumstances found in a bona-fide transaction, since a fraudulent transaction often produces stilted, contradictory and incredible evidence. *Id.* All the circumstances are ordinarily considered together, and, in the end, the resolution of each case rests with its own peculiar facts. The convergence of several badges or indices may support an inference of fraud, which grows in strength as the badges increase in number. *See* 37 C.J.S. *Fraudulent Conveyances* § 98 (1943). Clear and convincing evidence must support a finding of fraud. *Production Credit Ass'n*, 485 N.W.2d at 473.

 We find many of the recognized badges of fraud present in this case. First, Kruger was insolvent at the time of the transfer. Second, litigation was pending against Kruger. Kruger deeded the property shortly after Textron filed its application for default judgment. Third, Kruger and

Olson were close business associates. Olson's lawyer acknowledged Olson and Kruger had been close through the years, and Olson had been important to Kruger. Olson also helped Kruger start and maintain his business over the years. The two men worked together for many years and continued to be associated in the same business at the time of trial. Fourth, the transaction was consummated contrary to common business practices. Although Olson was a sophisticated buyer and seller of real estate, he failed to take even minimum steps to acquire information fundamental to the purchase of farm land. He never looked at the property, obtained a photograph of the property, inquired into the productivity of the land or its soil types, attempted to independently determine market value of the land, determined the real estate tax, examined the title before accepting the deed, inquired into the age of the life tenant, inquired into the total acres of the land, or inquired as to the existence of any leases affecting the land. Moreover, the Minnesota lawyer who advised Olson on the amount of consideration for the land testified he did not prepare the deed, although his secretary notarized the signature on the deed. Olson testified he drafted the deed using an Iowa State Bar Association form, but was unable to explain where he obtained the form. These are not typical circumstances of a bona-fide transaction.

We also believe the adequacy of the consideration is suspect, as well as the circumstances which led to an agreement concerning consideration. The farmland had been in Kruger's family for generations, and Kruger inherited his interest from his father. Kruger had listed the value of his interest on financial documents as high as $117,000. Olson and Kruger claimed to have negotiated over the price for nearly nine months, but Kruger never took any steps to independently determine its actual value. Olson relied only on the opinion of his lawyer, who was unable to explain or justify his opinion. Furthermore, the major obstacle in determining the value of Kruger's interests was the existence of the life estate, yet Olson and Kruger claimed they never discussed the health or life expectancy of Kruger's mother.

While Olson acted oblivious to the duration of the life interest, a bona-fide buyer would have expressed a keen interest in the life estate. Moreover, after months of negotiations Krueger abruptly conceded to Olson's original demand to deed the farm in return for a $35,000 credit on the debt with no additional benefit or concessions. Kruger testified he wanted a $75,000 credit. Under normal circumstances, a seller would not make such a drastic concession without some return benefit. Furthermore, the medical testimony plainly indicated Kruger's mother was in poor health at the time of the transfer.

▮▮▮▮▮ We acknowledge the adequacy of the consideration was clouded by the life estate. The land, however, was prime farm land and Kruger's mother was not in good health. Olson argues the consideration was not so disproportionate to the actual value as to render it inadequate. *See Steffy v. Schultz*, 215 Iowa 837, 246 N.W. 910 (1933) (consideration as little as forty-six percent of the actual value of land not inadequate). We refrain, however, from adopting any mathematical rules to determine the adequacy of consideration. All the facts and circumstances of each case must be considered. The amount of consideration has a greater impact in the resolution of the issue when viewed with the other circumstances behind the other badges of fraud. The amount of consideration in this case, when reviewed with the other circumstances, points to fraud.

▮▮▮ We find clear and convincing evidence Kruger intended to defraud Textron by transferring his interest in the farm to Olson. We also find clear and convincing evidence Olson actively participated in the fraudulent transaction. Olson knew of Kruger's financial problems with Textron, did not want Kruger to lose his family farm and wanted to help Kruger out of his financial problems. Moreover, the transfer of the farm occurred not as the result of the give and take of the negotiation process, but was rather abrupt and done after Textron began to assert itself through the legal process. It defies reason Kruger would suddenly sell the future interest in the family farm to Olson at Olson's original price after a long negotiation

period, and Olson would renew his demand for the land from Kruger without offering any concessions or additional benefits to him. We also observe Kruger and Olson flatly denied their friendship when the evidence at trial indicated otherwise.

We find it unnecessary to detail the other circumstances which further reveal the badges of fraud in this case. We find it sufficient to acknowledge there was also evidence of concealment and a reservation of an interest in the land by Kruger. We simply cannot ignore the many badges of fraud in the case.[1] Instead, we must yield to our recognized indicia of fraud, and find fraud when the badges are present.

When all the circumstances in this case are transposed upon the recognized badges of fraud, we find clear and convincing evidence of fraud on the part of Kruger and Olson. Accordingly, we turn our attention to examine whether Textron was prejudiced by the transaction.

██ A fraudulent conveyance will not be set aside unless complaining creditors can show they were prejudiced. *C. Mac Chambers Co. v. Iowa Tae Kwon Do Academy*, 412 N.W.2d 593, 596 (Iowa 1987). Prejudice means the creditors must show they would have received something which was lost by reason of the conveyance. *Id.*

██ Olson argues Textron was not "prejudiced by the valuation used" by Olson and Kruger to transfer the land because Kruger's actual debt to Olson exceeded even the highest actual value of the land. Thus, Olson asserts there would have been nothing left to apply to the Textron debt after Kruger's debt to Olson was satisfied even if the land had been transferred for full consideration.

 Olson bases his argument on the false premise that a creditor must show prejudice by reason of the inadequacy of the consideration. The inadequacy of the consideration, however, is simply one of the indicators of fraud, not a measuring stick for prejudice. We look for prejudice by what was lost

on account of the fraudulent conveyance, not the amount of consideration. *See C. Mac Chambers*, 412 N.W.2d 593 (Iowa 1987).

In *C. Mac Chambers*, the complaining unsecured creditors could not show prejudice because a secured creditor not involved in the transfer had a superior interest in the transferred assets which exceeded the value of the assets. *C. Mac Chambers*, 412 N.W.2d at 596. Thus, the disputed assets were not available to the complaining creditors even if the conveyance was set aside. *Id.* In this case, Olson's only interest in the land was by virtue of the fraudulent conveyance. Without the fraudulent conveyance, the land would have been available for Textron to enforce its judgment. Olson cannot claim Textron was not prejudiced by attempting to legitimatize the fraudulent transaction.

We have considered and reject all other claims asserted by Olson. We reverse the district court and remand the case for entry of an order directing the conveyance between Kruger and Olson be set aside.

**REVERSED AND REMANDED.**

---

1. The trial court concluded "despite all the factors Textron points out as being 'indicia of fraud', the court is not convinced that Seth Kruger intended to defraud Textron by quitclaiming his remainder to Olson, and even if Kruger did act with fraudulent intent, this court is not convinced that Olson intended to assist in that fraud by accepting the property transfer."