INNK LAND AND CATTLE COMPANY,
A Colorado Corporation, Appellee,

v.

Thomas R. KENKEL; Raylyn AG., Inc., An Iowa Corporation; Manawa Implement and Service, Inc., An Iowa Corporation; Gail Kenkel; Matthew Kenkel; Jeffrey L. Garrett; Linda Garrett; Mary K. Pfantz; and Ryan D. Pfantz, Appellants.

No. 94–990.

Supreme Court of Iowa.

April 17, 1996.

C.R. Hannan of Perkins, Sacks, Hannan, Reilly & Petersen, Council Bluffs, for appellants.

A.W. Tauke of Porter, Tauke & Ebke, Council Bluffs, and Thomas C. McGowan and

James J. Niemeier of McGrath, North, Mullin & Kratz, P.C., Omaha, NE, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and ANDREASEN, JJ.

CARTER, Justice.

The defendants, Thomas R. Kenkel, Raylyn Ag., Inc., Manawa Implement and Service, Inc., Gail Kenkel, Matthew Kenkel, Jeffrey L. Garrett, Linda Garrett, Mary K. Pfantz, and Ryan D. Pfantz, appeal from a judgment in which the plaintiff, INNK Land and Cattle Company, a Colorado Corporation (INNK), was successful in voiding certain transfers of property by some of the defendants on the ground that the transfers were in fraud of creditors. Upon reviewing the record and considering the arguments presented, we affirm the judgment of the district court.

The action presents a series of extremely complex financial transactions involving the parties. Raymond and Evelyn Kenkel obtained stock in various corporations in Colorado by means of subscription agreements requiring them to transfer substantial assets to these corporations. After learning that the immediate transfer of these assets would produce a substantial income tax liability on their part, Raymond and Evelyn delayed these asset transfers with the assurance that, if the properties were ultimately sold, that portion of the proceeds necessary to satisfy the subscription obligations would be paid to the corporations. Some of these assets were transferred, and the proceeds were not accounted for. Ultimately, based on these transactions, INNK on November 27, 1985, recovered a money judgment in a Colorado federal court against Raymond and Evelyn for the sum of $964,858. That judgment was not appealed. Later it was determined in federal bankruptcy proceedings initiated by Raymond and Evelyn in the United States District Court for the Southern District of Iowa that, because the judgment was based on fraud, it was not dischargeable.

On November 15, 1988, INNK commenced the present action, alleging that Raymond and Evelyn and corporations controlled by them had transferred substantial assets to the individual and corporate defendants with the intent to impede collection of INNK's claims.

The district court initially determined that INNK's action was barred by both federal and state statutes of limitation. That ruling was reversed by this court. *See INNK Land & Cattle Co. v. Kenkel,* 493 N.W.2d 818 (Iowa 1992). The action was later tried on the merits. The district court, sitting without a jury, found in favor of INNK on its material allegations and entered a judgment in which it ordered certain of the corporate defendants controlled by Raymond and Evelyn to cancel stock certificates issued to the individual defendants and reissue those shares to INNK. In addition, INNK was granted personal judgment against two of the corporate defendants controlled by Raymond and Evelyn and against their son, defendant Thomas Kenkel, for the value of the transferred assets dissipated by Thomas and the corporations.

In this appeal, defendants urge three grounds for reversal. These are: (1) that the district court incorrectly determined that the action was not barred by the statute of limitations; (2) that INNK was not an existing creditor at the time of many of the challenged transfers, a circumstance that affects the elements of the claim and ultimately defeats INNK's right to relief; and (3) that the property transferred was substantially encumbered and otherwise lacking in value so that no prejudice resulted to INNK from the challenged transactions. We will discuss each of these claims.

## I. *The Statute-of-Limitations Issue.*

■ *A. The law-of-the-case argument.* On the earlier appeal in this action, the issues were framed in terms of whether the action had been commenced within five years of the time when INNK should reasonably have been aware that the challenged asset transfers had occurred. The district court (acting through a different judge) had resolved this issue against INNK on a motion for summary judgment. In reversing that decision, we found that there was a genuine

issue of material fact concerning when INNK could have known of the asset drain.

In the findings of fact and conclusions of law entered on the merits of the case, the district court concluded that, if correctly applied, the statute of limitations allowed INNK to bring the present action within five years of the time its claim was reduced to judgment in the Colorado federal court. Because that judgment was entered on November 27, 1985, and this action was commenced on November 15, 1988, the court found the claim was not barred.

Defendants argue that the district court, after the prior appeal, injected a new theory concerning the period of limitations and thus ignored the law of the case. We disagree. Our holding on the prior appeal only determined that the grant of summary judgment was erroneous based on the reasons given by the district court. Following our reversal of that ruling, the situation confronting the district court was the same as if it had overruled the motion for summary judgment in the first instance. That ruling was not frozen either as to legal theory or result and could be amended as the case progressed. *See Allied Mut. Cas. Co. v. Long,* 252 Iowa 829, 831–32, 107 N.W.2d 682, 683 (1961).

■■ *B. The merits of the statute-of-limitations issue.* On the merits of the statute-of-limitations ruling, the district court was clearly correct. We have held that claims to void fraudulent transfers are seeking "relief on the ground of fraud" and thus are subject to the five-year statute of limitations now contained in Iowa Code section 614.1(4) (1993). *Bristow v. Lange,* 221 Iowa 904, 912, 266 N.W. 808, 812 (1936). Because, however, one must be a lien creditor in order to challenge a transfer of the debtor's assets, a cause of action for fraudulent conveyance does not accrue until the creditor is entitled to obtain a lien on the property. *Olson v. Larson,* 233 Iowa 1032, 1034, 8 N.W.2d 697, 698–99 (1943); *Somers v. Spaulding,* 229 Iowa 432, 435, 294 N.W. 610, 611 (1940); *Bristow,* 221 Iowa at 914, 266 N.W. at 812–14. In the absence of circumstances not present in this case, this requires that the creditor's claim first be reduced to judgment. *Olson,* 233 Iowa at 1034–35, 8 N.W.2d at 699.

There is a corollary to this rule which holds that there is a presumption of laches if a judgment is not obtained within five years of the time the creditor should have been aware of the challenged transfers. *Id.; Somers,* 229 Iowa at 436, 294 N.W. at 611. Although these rules were modified by statute in 1994 Iowa Acts chapter 1121, section 13, they are applicable to the present dispute. Based on any reasonable view of the evidence, INNK did obtain judgment within five years of the time that it could have known of the asset drain. Consequently, laches did not exist, and the usual rule allowing five years to sue after entry of judgment must prevail. INNK brought its action well within this time.

## II. INNK's Status as an Existing Creditor.

■■ Defendants urge that many of the challenged transfers occurred prior to the time that INNK was a creditor of the transferors. This circumstance, they contend, should preclude INNK's efforts to void the transfers. This argument is premised on the theory that, although the transfers were made without the transferors receiving valuable consideration, they were not intended to defraud any creditor of Raymond or Evelyn. Our cases recognize that, in challenging the transfer of a debtor's assets, those creditors whose claims arose after the transfer face a much greater burden than those creditors existing at the time the challenged transfers were made. As to existing creditors, any transfer of property, by an insolvent, not made on a consideration deemed valuable in law is prima facie void. *Benson v. Richardson,* 537 N.W.2d 748, 756 (Iowa 1995); *Knabe v. Kirchner,* 228 Iowa 1156, 1166, 293 N.W. 433, 438 (1940); *Grimes Sav. Bank v. McHarg,* 224 Iowa 644, 646–47, 276 N.W. 781, 783–84 (1937). It is not necessary in such instances to establish an actual fraudulent intent. *First Nat'l Bank v. Frescoln Farms, Ltd.,* 430 N.W.2d 432, 436 (Iowa 1988). As to subsequent creditors, a transfer of the debtor's assets may not be successfully challenged unless it appears that the conveyance was executed with an actual intent on the grantor's part to defraud subsequent

creditors. *Production Credit Ass'n v. Shirley,* 485 N.W.2d 469, 472–73 (Iowa 1992); *Harvey v. Phillips,* 193 Iowa 231, 235, 186 N.W. 910, 912 (1922).

Applying these principles to the facts of this case leads to the conclusion that INNK enjoyed the status of an existing creditor with respect to all of the asset transfers set aside by the district court. That status arose at the time of Kenkels' stock subscription agreement made at the inception of the incorporation process. All of the voided transfers occurred after that time.

Because this case was tried in equity, our review is de novo. Iowa R.App.P. 4. Although we give weight to the findings of the district court, we are not bound by them. Iowa R.App.P. 14(f)(7). In reviewing the evidence, we are in complete agreement with the district court's findings concerning the absence of legal consideration. Those findings are sufficient to support the setting aside of the challenged transfers. In order to sustain the personal judgments entered against the two corporations, it was necessary to show that they were controlled by Raymond and Evelyn. *Benson,* 537 N.W.2d at 761–62. The district court found that they were, and on our review of the record, we agree with those findings. In order to sustain the personal judgment entered against defendant Thomas Kenkel, it was necessary to show that he actively participated in the efforts to impede the collection of INNK's claims. *Shirley,* 485 N.W.2d at 475. The district court found that Thomas was aware of the fact that the transferors intended to place these assets beyond INNK's reach. Once again we agree with the district court's finding.

### III. *Defendants' Claims Concerning Lack of Prejudice.*

It is essential in an action to set aside an allegedly fraudulent conveyance that the creditor establish that it was prejudiced as a result of the transfer. *Shirley,* 485 N.W.2d at 474. The defendants in the present case assert that no such prejudice occurred from those transfers of assets assailed by INNK. They advance three theories as to why this is so. First, they claim that all of the property owned by Raymond and Evelyn or corporations controlled by them has been encumbered by one or more creditors since at least 1981. Second, they contend that most of the transferred property was consumed in the payment of preexisting indebtedness. Finally, they contend that gifts of stock antedating their debtor-creditor relationship with INNK, and which may not be voided on grounds of fraud, serve to substantially dilute the value of those shares that the district court did order to be canceled and reissued to INNK.

Our examination of the record suggests that these claims each present factual rather than legal issues. The district court found as follows on the first two contentions:

> Defendants claim the funds transferred by the Kenkels were consumed in payment of preexisting indebtedness and that the stock transfers sought to be avoided were of heavily encumbered corporate assets. No credible evidence was presented that any of the transfers were consumed by preexisting indebtedness.

Our review of the record convinces us that these findings were correct. With respect to the contention that the per-share value of the transferred stock had been diluted by earlier gifts, the district court found this assertion to be inconsistent with figures shown on federal gift tax returns executed by Raymond and Evelyn. Relying on the transferors' own declarations of value on those returns, the district court found that the stock was of sufficient value that INNK was prejudiced by the transfers. The record fully supports the district court's view of the evidence on this issue.

We have considered all issues presented and conclude that the judgment and decree of the district court should be affirmed.

**AFFIRMED.**