**Wayne RALFS, Appellant,**

v.

**Reynold MOWRY and Gary Mowry d/b/a Mowry Brothers, Appellees.**

**No. 97–458.**

Supreme Court of Iowa.

Nov. 25, 1998.

Brian T. Fairfield of Norton & Norton, P.C., Lowden, for appellant.

Edward M. Blando, David A. Elderkin and Richard Q. Barrett of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellees.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

This appeal stems from decisions rendered in two actions consolidated for trial. In the first action, plaintiff Wayne Ralfs sought to set aside farm leases held by defendants Reynold and Gary Mowry on property owned by LoAn King. Ralfs' second cause of action sought an accounting of the sum required to satisfy Mowrys' mortgage on the King property. The record reveals that subsequent to the execution of the leases between Mowrys and King, Ralfs secured title to the property through assignment of a sheriff's deed procured by another of King's creditors, Eddy Matsui.[1]

The district court found Ralfs failed to prove his claim that the Mowry/King transactions amounted to fraudulent conveyances. The court also determined that Ralfs must pay an additional $29,006.55, plus accrued interest, to satisfy Mowrys' outstanding mortgage on the property. Ralfs appealed.

We transferred the case to the court of appeals. That court affirmed in part and reversed in part, concluding the transactions between Mowrys and King should be set aside as fraudulent, and adjusting downwards the amount needed to satisfy Mowrys' mortgage. We granted further review and now vacate the judgment of the court of appeals and affirm the judgment of the district court with some modification of the accounting.

## I. Scope of Review.

At the outset the parties disagree over the appropriate standard of review on appeal. The court of appeals applied a de novo standard. Mowrys argue for an at-law standard on further review, claiming the case turns on possession of real property and damages. *See Christian Church at Pella v. Scholte*, 2 Iowa 27, 2 Clarke 27, 29 (Iowa 1855) (claim to ownership of property in fee simple and damages for retention thereof triable at law).

Our review is governed by how the case was tried in district court. *Howard v. Schildberg Constr. Co.*, 528 N.W.2d 550, 552 (Iowa 1995). Both of Ralfs' actions were filed in equity. He seeks relief based on a theory of fraudulent conveyance, a doctrine permitting transactions—including leases—to be set aside on equitable grounds when certain indicia of fraud have been proven. *See Graham v. Henry*, 456 N.W.2d 364, 366 (Iowa 1990); *Textron Fin. Corp. v. Kruger*, 545 N.W.2d 880, 883 (Iowa App.1996). His claims are predominately equitable in nature.

The case was tried to the court without a jury. Mowrys emphasize that the district court ruled on objections (four), a practice we have disapproved in equity cases. *See Howard*, 528 N.W.2d at 552. Yet neither party claims evidence was improperly excluded. Thus we are not prevented from exercising de novo review of the record, a matter to which we now turn.

## II. Facts.

Since the early 1980s, Reynold and Gary Mowry d/b/a Mowry Brothers, have leased 120 acres of farm ground near Bennett, Iowa, from LoAn King. In 1990, King—then a widow—desired to pay off a prior mortgage on the property. The Mowrys agreed to loan her $125,000 at twelve percent interest, secured by a first mortgage on the farm. The parties also negotiated a two-year lease for 116 acres of tillable ground at $15,000 per year, a sum corresponding to annual interest due on the loan.

Meanwhile, LoAn King became embroiled in a controversy with Eddy Matsui, a man with whom she lived for a time following the death of her husband. In September 1991, Matsui secured a default judgment against her in federal district court in California. King, who believed the suit was meritless, attempted unsuccessfully to set aside the default. The judgment, for $133,935.23 plus interest and attorney fees, was not properly registered in Iowa until February 1994. Significantly, the court rendering the judgment specifically rejected Matsui's request for special execution on the land which is the subject of this appeal.

---

1. Neither King nor Matsui are parties to this appeal.

In the meantime, Mowrys and King negotiated extensions of their lease agreement for the period March 1, 1993, to February 28, 1994, with two, one-year lease options. Before the options could be exercised, they renegotiated their agreement to extend the 1993–94 lease under the same terms through February 1996, with three one-year extension options. At the same time, Mowrys and King executed an extension of their original mortgage, reducing the interest rate to 9.5%, and securing an advance for $8962.13 in unpaid taxes. The indebtedness was also enlarged to include a $15,000 payment that was applied, not to interest on Mowrys' mortgage, but to expenses related to the King/Matsui litigation. Neither the mortgage extension nor the new lease were recorded.

Wayne Ralfs, meanwhile, kept abreast of these events because he was an adjoining landowner who was interested in buying King's farm. The record reveals that he lent money to another corporation, Circle J, to help finance King's effort to set aside the Matsui judgment in California. When that proved unsuccessful, he switched sides, contracting with Matsui to purchase whatever rights Matsui gained by execution on the judgment. When the King farm was eventually purchased at sheriff's sale by Matsui in February 1995, Ralfs had to sue Matsui to enforce their agreement. They settled their differences in March 1996, when Matsui gave Ralfs a quit claim deed and assignment of his sheriff's certificate of sale. In April 1996, Ralfs received a sheriff's deed to the King farm, and has been the legal titleholder ever since.

That brings us to the current controversy. In July 1996, Ralfs tendered a check to Mowrys in the sum of $132,000 to satisfy their first mortgage on the property. An accompanying letter acknowledged that the precise payoff amount was undetermined. Mowrys' unwillingness to file a release of the mortgage lien led Ralfs to bring an action for an accounting of the balance due. Ralfs also claimed superior possessory rights to the

farm, alleging the lease extensions were fraudulent conveyances designed to keep the property out of Matsui's—and, hence, Ralfs'—hands. The suits were consolidated for trial.

The district court found no merit in Ralfs' fraudulent conveyance theory, and found Mowrys' accounting of the balance due on the mortgage more credible than Ralfs'. This appeal by Ralfs followed.

## III. Issues on Appeal.

**A. Fraudulent conveyance.** Ralfs argues the lease extension negotiated by Mowrys and King in January 1994 should have been set aside by the district court on the ground of fraud. The transaction undisputedly came on the heels of Matsui's second unsuccessful attempt to execute on the property.[2] Ralfs claims Mowrys and King used this hiatus in the legal proceedings to wrongfully withhold possession of the King farm from Matsui and him. Mowrys contend, and the district court found, that Mowrys were merely accommodating King's wish to maintain a stable mortgage relationship while she fought Matsui and attempted to refinance the mortgage elsewhere, and it was in Mowrys' interest to extend the lease while the property was free and clear of Matsui's judgment.

Our assessment of Ralfs' allegation of fraudulent conveyance is guided by well-established legal principles. A fraudulent conveyance is a transaction by which the owner of real or personal property places the land or goods beyond the reach of the owners creditors, to the prejudice of the creditor's legal or equitable rights. *Benson v. Richardson*, 537 N.W.2d 748, 756 (Iowa 1995). The doctrine

> advances the principle that a debtor's property constitutes a fund from which debts should be paid and that the debtor may not hinder a creditor's right to proceed against the fund. A debtor who disposes of property with the intent to delay or defraud creditors exceeds legitimate authority and the transaction will be deemed

2. In December 1993, the district court for Cedar County set aside a sheriff's sale of the property because Matsui had not properly registered his foreign judgment. The court also voided an earlier sale by a U.S. marshall.

to be inequitable and subject to being set aside.... [T]he doctrine [applies] to leases as well as absolute conveyances of title. *Graham,* 456 N.W.2d at 366 (citations and quoted authority omitted). A party asserting fraud bears the burden of proving its existence by clear, satisfactory, and convincing evidence. *Benson,* 537 N.W.2d at 756.

A court considering a claim of fraudulent conveyance looks for "badges or indicia of fraud" such as inadequacy of consideration, the transferor's insolvency, pendency or threat of third-party creditor litigation, secrecy or concealment, departure from usual business methods, reservation of benefits to the transferor, and the debtor's retention of the property. *Id.; Graham,* 456 N.W.2d at 366. Ordinarily, proof of more than one of these "badges" will be necessary to warrant an inference of fraud in a transaction. *Graham,* 456 N.W.2d at 366.

It must also be remembered that ordinarily a debtor may prefer one creditor over another, "even if the debtor's intentions ... are spiteful and the action will delay or prevent the nonpreferred creditor from obtaining payment." *Benson,* 537 N.W.2d at 757. But an otherwise valid lease may be set aside if the facts reveal bad faith and an intent to deceive so as to create a mere pretense of a lease, thereby thwarting the rightful collection of rents and profits. *Webber v. King,* 205 Iowa 612, 617–18, 218 N.W. 282, 284 (1928); *accord Graham,* 456 N.W.2d at 367.

We conclude, as did the district court, that the record before us falls far short of proving fraud by the requisite clear and convincing standard. The lease extensions about which Ralfs complains did no more than continue a business relationship between Mowrys and King that extended back more than a decade. Although Ralfs contends the extensions were given for less than adequate consideration, the record reveals the Mowrys rented adjoining ground at $125 per acre, less than the $130 per acre paid under the leases in question. While the record supports an inference that King was struggling financially, it is far from clear that she was insolvent. *See First Nat'l Bank v. Frescoln Farms, Ltd.,* 430 N.W.2d 432, 436 (Iowa 1988) (when insolvent, debtor's debts are greater than debtor's assets at fair valuation). The transactions were done openly and with notice to Ralfs that Mowrys intended to exercise their renewal options. At the time the renewals were negotiated, Ralfs could claim no possessory interest superior to King's or Mowrys'; nearly thirteen months passed before either Matsui or Ralfs gained an interest in the property by virtue of the execution sale.

These facts differ markedly from those revealed in *Graham v. Henry,* for example, where a "sham" farm lease between parents and their children was executed for the sole purpose of avoiding an imminent contract forfeiture. *Graham,* 456 N.W.2d at 366–67. In *Graham* the children were in default under the land contract and their parents, with whom they farmed, stepped in as mere "straw" tenants to effectively extend their children's possessory interest in the farm. *Id.* at 367. We affirmed the judgment setting aside the lease on the ground of fraud, convinced the parties' scheme was motivated by deceit, not a legitimate business purpose. *Id.*

No such pretense has been proven here. The landlord-tenant relationship between King and Mowrys was legitimate and long-standing. The lease terms, while arguably favorable to Mowrys, were by no means out of line. When Ralfs took title to the farm in 1996, he was well aware the ground was leased through the 1998 crop year. The record, taken as a whole, fails to support Ralfs' claim of fraudulent conveyance. We affirm the district court's dismissal of the action.

**B. *Accounting.*** Ralfs also contests the district court's finding that he must pay an additional $29,006.55 plus accrued interest to satisfy Mowrys' outstanding mortgage on the property. The court of appeals adjusted the figure downward. Mowrys do not specifically address the modification in their application for further review.

As aptly noted by the district court, the parties' numerous accounting exhibits are "confusing and contradictory." The court ultimately relied on an exhibit prepared by Mowrys as the document most accurately

reflecting the agreements between Mowrys and King. We are convinced, however, that to the extent the exhibit includes a $15,000 advance by Mowrys that was not secured under the original mortgage, the court's reliance on it was misplaced. *See Decorah State Bank v. Zidlicky*, 426 N.W.2d 388, 390 (Iowa 1988) (future advances clauses strictly construed against mortgagee, suspect under Iowa law, and must clearly relate to same transaction or series of transactions as principal obligation secured). The court of appeals recognized this error in the court's ruling. We concur in the court of appeals' analysis and modify the mortgage balance accordingly. The sum required by Ralfs to secure the release of Mowrys' mortgage is $15,661.05 plus interest from February 19, 1997. Costs on appeal shall be shared equally by the parties.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.**